UNITED STATES, Appellee,

v.

**Enrique AUCH, a/k/a Rickie Auch,
Defendant, Appellant.**

No. 97–1825.

United States Court of Appeals,
First Circuit.

Heard May 5, 1999.

Decided July 22, 1999.

Rehearing Denied Aug. 26, 1999.

Jennifer Petersen, with whom Karl R.D. Suchecki, and Petersen & Suchecki were on brief, for appellant.

Cynthia A. Young, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief, for appellee.

* Of the Eleventh Circuit, sitting by designation.

Before SELYA, Circuit Judge, KRAVITCH,* Senior Circuit Judge, and LIPEZ, Circuit Judge.

KRAVITCH, Senior Circuit Judge.

This appeal requires us to address whether a prosecutor's various errors and acts of misconduct throughout the course of a criminal trial require reversal. Although we find fault with a number of the prosecutor's tactics in this case, we conclude that none of these errors supports reversal under the applicable standards of review. Accordingly, we affirm.

## BACKGROUND

Enrique "Rickie" Auch stood trial for armed bank robbery in violation of 18 U.S.C. § 2113(a), robbery affecting commerce in violation of the Hobbs Act, 18 U.S.C. § 1951(a), and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). The evidence at trial showed that Auch had participated in the robbery of an armored car delivering money to the Fleet National Bank in Charlestown, Massachusetts (the "Charlestown robbery"). James Tracy, another participant in the Charlestown robbery, cooperated with the government and testified against Auch at trial. Tracy testified that Auch had stolen cars to help facilitate the robbery and that, when one of the other members of the group that had planned the robbery could not participate, Auch agreed to replace him as the driver. Tracy also testified that he gave Auch an unloaded .357 revolver as the group prepared to rob the armored car. Tracy testified regarding the events of the robbery, which lasted no more than 30 seconds and netted $350,000.

Steven Connolly also testified against Auch as a government witness. Connolly had not participated in the Charlestown robbery, but he agreed to permit the government to tape a conversation between himself and Auch during which Auch bragged about his participation.[1] The gov-

1. Connolly was serving time on unrelated charges in a Massachusetts state prison when

**128**

ernment introduced a recording of the inculpatory conversation and a transcript of the relevant portions at Auch's trial.[2] During trial, Auch's counsel questioned the credibility of both Tracy and Connolly, suggesting that the witnesses had an incentive to lie about Auch's involvement in the Charlestown robbery to receive more favorable treatment from the government on the various charges they faced.

In the government's opening statement, the prosecutor told the jury that they would hear testimony from Auch's friends, i.e., the people with whom Auch had chosen to associate and work. Then, during the government's direct examinations of Tracy and Connolly, the prosecutor repeatedly referred to a separate crime in Hudson, New Hampshire, involving the murder of two persons during the robbery of an armored car (the "Hudson robbery"). Tracy admitted to having participated in that robbery, and the prosecutor asked Connolly why the FBI had interviewed his girlfriend about the Hudson robbery. Despite Auch's repeated objections, which the district court sustained, the prosecutor continued to ask questions concerning the Hudson robbery and referred to the crime again during closing argument.

During closing and rebuttal arguments, the prosecutor made a further series of questionable and troubling remarks. First, the prosecutor made various assertions in support of the credibility of the government's witnesses. The prosecutor asserted that Tracy had no motive to lie, that Tracy knew that if he lied "his life is done," and that Tracy had told the truth about Auch and his own crimes, "like the honest man that he has been in this court." The prosecutor suggested that if Tracy had wanted to curry favor with the govern-

ment by testifying falsely against Auch that he would have fabricated a stronger story against him. Finally, the prosecutor urged the members of the jury to convict Auch because if they failed to do so Auch "would ... laugh[] all the way to the bank."

## DISCUSSION

### I. References to Matters Not in Evidence

Auch's first and most serious ground for appeal concerns the prosecutor's repeated references to a separate crime—the Hudson robbery—during the presentation of the government's evidence. Auch argues that the references to this independent crime, in combination with the prosecutor's earlier statement that Auch was friends with government witnesses, implicated Auch in the violent and well-publicized Hudson robbery and unfairly prejudiced the jury against him.

■■ Before we turn to the merits of Auch's argument, we must decide the standard of review. The government argues that we should review Auch's claims for plain error because Auch failed to object with specificity to the prosecutor's references to the Hudson robbery at trial, while Auch argues that his objections were sufficient to avoid plain error review. In *United States v. Carrillo-Figueroa*, 34 F.3d 33 (1st Cir.1994), we explained that "[u]nless the basis for objection is apparent from the context, the grounds for objection must be specific so that the trial court may have an opportunity to address the claim later sought to be presented on appeal." *Id.* at 39. A review of the trial transcript reveals that Auch repeatedly objected to the pros-

he agreed to assist the federal government. Agents of the Federal Bureau of Investigation (the "FBI") arranged for Auch and Connolly to be placed in a room in which the agents had planted a listening device.

2. Although the trial transcript reveals that the district court admitted the government's transcription of Auch's confession into evidence

as an exhibit and permitted the jury to use both the transcript and the recording in their deliberations, the court instructed the jury that it could not consider the transcript as independent evidence of the conversation but merely as an aid in interpreting the recording.

ecutor's questions regarding the Hudson robbery but never proffered specific grounds for his objections.[3] Nevertheless, given the context of the issues at stake during the trial and the complete irrelevance of the Hudson robbery to the case against Auch, we conclude that the grounds for Auch's objections were clear. It is significant that the district court felt no need to inquire as to the grounds for Auch's objections before immediately sustaining them.[4]

The government, however, argues that Auch's objections to the prosecutor's irrelevant questions cannot preserve the present grounds for appeal—namely, prosecutorial misconduct. *See United States v. Montas*, 41 F.3d 775, 782–83 (1st Cir.1994) (applying plain error review when the grounds for the defendant's objections varied from the issue on appeal). We cannot agree. The prosecutor in this case continued to make improper references to the Hudson robbery despite the district court's repeated decisions sustaining Auch's continued objections. Here the relevant exchanges sufficiently alerted both the government and the district court to the prosecutor's apparently willful misconduct in ignoring the trial court's evidentiary rulings so as to preserve the issue of prosecutorial misconduct for appeal. *See Carrillo–Figueroa*, 34 F.3d at 39 (noting that context can make the grounds for objection obvious); *cf. United States v.*

*Wilson*, 149 F.3d 1298, 1301 & n. 5 (11th Cir.1998) (permitting full appellate review of defendant's allegations of prosecutorial misconduct despite defendant's failure to object to each relevant remark). Accordingly, we afford Auch's arguments on this issue full appellate review and will not apply the plain error rule.

■■■ We turn now to the merits of Auch's argument that the prosecutor's repeated references to the Hudson robbery warrant the reversal of his convictions.[5] The law is clear that a prosecutor's reliance (or apparent reliance) upon matters not in evidence is improper. *See United States v. Tajeddini*, 996 F.2d 1278, 1284 (1st Cir.1993). We do not consider the challenged comments in isolation but within the broader context. *See United States v. Sepulveda*, 15 F.3d 1161, 1187 (1st Cir. 1993). In assessing a defendant's allegation of prosecutorial misconduct we consider (1) whether the prosecutor's misconduct was isolated and/or deliberate; (2) whether the trial court gave a strong and explicit cautionary instruction; and (3) whether any prejudice surviving the court's instruction likely could have affected the outcome of the case. *See United States v. Hodge–Balwing*, 952 F.2d 607, 610 (1st Cir.1991) (citing *United States v. Capone*, 683 F.2d 582, 586–87 (1st Cir.1982)). In this case, the prosecutor's continued references to the Hudson robbery over Auch's repeated and sustained objections[6] compel the con-

---

3. *See* Trial Tr. 2 at 53–54 (district court sustained Auch's objections during the prosecutor's direct examination of Tracy saying, "Let's stick to this trial. We're not trying a case in New Hampshire."); Trial Tr. 4 at 11–12, 40 (court sustained Auch's objections to questions regarding the Hudson robbery during the government's direct examination of an FBI special agent); *id.* at 56, 74–76 (district court again sustained Auch's objections during the government's direct examination of Connolly, instructing the prosecutor to "stick to this case" and to "get back to the matters at hand," respectively).

4. *See supra* note 3.

5. We reject Auch's argument that the prosecutor's reference to Tracy and Connolly as

Auch's friends during the opening statement, standing alone, merits reversal. The context of these remarks make it clear that the prosecutor merely sought to explain to the jury why the government would have to rely on witnesses with criminal records. *See United States v. Doherty*, 867 F.2d 47, 70–71 (1st Cir.1989) (upholding a prosecutor's references to the defendant's choice of friends as proper in an analogous context).

6. *See supra* note 3; *see also* Trial Tr. 5 at 20 (the district court, before closing arguments, again "emphatic[ally]" cautioned the government to avoid injecting the murders connected with the Hudson robbery into the trial); *Id.* at 30 (during closing argument, prosecutor noted Auch's affiliation with the people

clusion that the prosecutor's comments were part of a deliberate pattern.[7] The record also demonstrates that the district court sustained Auch's objections to the prosecutor's questions regarding the Hudson robbery and instructed the prosecutor, in front of the jury, to stick to the case at hand.

■ Finally, and most importantly, however, we cannot say that the prosecutor's misguided tactic in this case could have affected the outcome of the trial. The evidence the government adduced against Auch at trial overwhelmingly demonstrated his guilt on the charges at hand.[8] Tracy testified at length and in detail regarding Auch's participation in the robbery, and the government bolstered his testimony with corroborating evidence. Particularly damning to Auch's case was the government's introduction of Auch's tape-recorded statements, made to Connolly, boasting about his participation as the "wheelman" in the Charlestown robbery. In the face of such evidence regarding Auch's participation in the Charlestown robbery we cannot say that the prosecutor's conduct, improper though it was, "so poisoned the well" to require reversal. *Hodge–Balwing*, 952 F.2d at 610 (internal quotation omitted).

## II.  Auch's Remaining Contentions

■ At oral argument, Auch conceded that he failed to preserve the remaining issues for appeal by making contemporaneous objections at trial. Absent such objections, we review a defendant's claims for plain error. *See United States v. Olano*, 507 U.S. 725, 732–37, 113 S.Ct. 1770, 1776–79, 123 L.Ed.2d 508 (1993) (describing the plain error standard); *United States v. Wihbey*, 75 F.3d 761, 770 & n. 4 (1st Cir.1996). We will not reverse a conviction on plain error review unless the error affects the substantial rights of the defendant. *See* Fed.R.Crim.P. 52(b). We cannot find that an error has affected the defendant's substantial rights unless it is clear that the error affected the outcome of the proceedings. *See Olano*, 507 U.S. at 734, 113 S.Ct. at 1777–78. Given our conclusion above that the government's evidence against Auch was overwhelming and even the prosecutor's serious error could not have affected the outcome of the trial, Auch's remaining allegations of error do not merit reversal under our more limited plain error review. Nevertheless, to the extent Auch has raised issues of substance, we will catalog and discuss his claims to reemphasize our teachings on these issues and to deter future prosecutorial misconduct.[9] *See generally United States v. Hasting*, 461 U.S. 499, 506–07, 103 S.Ct. 1974, 1979, 76 L.Ed.2d 96 (1983) (prosecutorial misconduct that does not affect the defendant's substantial rights may not permit the guilty to go free simply to deter future misconduct).

### A.  Prosecutorial Vouching

■ A prosecutor may not place "the prestige of the government behind a wit-

---

who had shot their victims during the course of the Hudson robbery).

7.  Although the government, represented by different counsel on appeal, attempted to explain the prosecutor's remarks and place them in a benign context, both in its brief and at oral argument, it (quite properly) conceded that some of the trial prosecutor's remarks showed an undue interest in matters beyond the scope of Auch's case.

8.  In assessing a claim of prosecutorial misconduct, we take a balanced view of the evidence; we do not view the evidence in the light most favorable to the government. *See*

*United States v. Roberts*, 119 F.3d 1006, 1008 (1st Cir.1997) (drawing a contrast with an appeal that challenges the sufficiency of the evidence supporting a conviction); *Arrieta–Agressot v. United States*, 3 F.3d 525, 528 (1st Cir.1993) (same).

9.  We will not discuss Auch's argument that the government improperly attempted to shift the burden of proof to the defendant nor his argument that the government indirectly commented on his right not to testify. After reviewing the trial transcript, we find Auch's claims with respect to these issues to be without merit.

ness by making personal assurances about the witness'[s] credibility;" nor may the prosecutor indicate that facts outside the jury's cognizance support the testimony of the government's witnesses. *United States v. Neal,* 36 F.3d 1190, 1207 (1st Cir.1994). Auch argues that the prosecutor engaged in several instances of improper vouching during his closing argument, particularly with reference to Tracy, the government's primary witness.

■ First, Auch correctly points out that the prosecutor improperly injected his personal opinion of the evidence into his closing argument. *See United States v. Smith,* 982 F.2d 681, 684 & n. 2 (1st Cir. 1993) (prosecutor's use of "I think" during closing argument was improper). The prosecutor in this case told the jury that "[t]he only way *I can even imagine* ever acquitting this man of any of the charges is if you totally disbelieve Mr. Tracy as to everything he said about Mr. Auch." Although the prosecutor did not use the prohibited "I think," language, the statement nonetheless conveyed a personal opinion to the jury and, therefore, was improper.

■ Second, Auch argues that the prosecutor's statements that Tracy had told the truth, that he had acted like an honest man, and that Tracy's life would be over if he had lied during the trial, constituted further illegal vouching. To the extent that the prosecutor's arguments referred to Tracy's motives to tell the truth, the argument falls within the accepted bounds and was entirely proper. *See United States v. Dockray,* 943 F.2d 152, 156 (1st Cir.1991); *United States v. Mar-*

*tin,* 815 F.2d 818, 821–23 (1st Cir.1987). The prosecutor's introduction of Tracy's plea agreement and his commentary on the dire consequences Tracy would face if he committed perjury during Auch's trial, therefore, do not constitute improper vouching.

■ Beyond that, however, many of the prosecutor's remarks may have crossed the line. The government concedes that the prosecutor's repeated statements to the effect that Tracy had acted like an honest man and had testified truthfully at least entered a gray area of impropriety. *See United States v. Innamorati,* 996 F.2d 456, 483 (1st Cir.1993) (noting a "hazy" line between legitimate argument and improper vouching). Although some of the challenged statements fall into this gray area, assertions to the effect that Tracy had told the truth run afoul of the long-standing decisions of this court. *See Wihbey,* 75 F.3d at 772 (prosecutor's comment that government witness testified truthfully was improper); *United States v. Mejia–Lozano,* 829 F.2d 268, 273 (1st Cir. 1987) (same).[10] We acknowledge that Auch's strategy at trial was to characterize Tracy and Connolly as witnesses who had lied to curry favor with the government and that the prosecutor's remarks came in response to defense counsel's attempts to portray the government's witnesses in the worst light.[11] *See Mejia–Lozano,* 829 F.2d at 274 (giving the prosecutor "greater leeway" when improper vouching came "in response to defense counsel's inflammatory statements"). Nevertheless, "a trespass by the defense [does not] give[ ] the prosecution a hunting license exempt from

---

**10.** We find the following passage to be a particularly troubling example of comments that cross the line—however hazy it may be:

[Tracy is] telling the truth on everything, and then he just wants to—he has it in for Rickie Auch? Not a smidgen of evidence, nothing to suggest that he has anything in for Rickie Auch. . . .

. . .    .    .    .    .

. . . [H]e's telling the truth. He's telling the truth about Rickie Auch. He's telling the

truth about himself. He's telling the truth about his involvement in this robbery as well as in all other criminal cases.

.    .    .    .    .

. . . [H]e stood there and just explained it to you like the honest man that he has been in this court, that he was throughout his testimony. . . .

**11.** *See, e.g.,* Trial Tr. 5 at 54 (Auch's counsel calls Tracy and Connolly "liars" and "hurters" during closing argument).

ethical restraints on advocacy." *Capone,* 683 F.2d at 586 (quoting *Patriarca v. United States,* 402 F.2d 314, 321 (1st Cir. 1968)).

■■■ Finally, Auch challenges the prosecutor's comments to the effect that if Tracy was willing to lie about Auch's involvement in the robbery to curry favor with the government, he would have concocted a more damaging story.[12] We found this type of comment to be beyond the bounds of proper argument in *United States v. Manning,* 23 F.3d 570 (1st Cir. 1994). In that case, the prosecutor said that if the government's witness really wanted to lie, there were "a million little ways they could have given it to the Defendant" but argued that the government's witnesses could not lie or exaggerate because they were bound by their oaths and the truth. *Id.* at 572. We held that this improper vouching, in combination with a number of additional prosecutorial missteps during closing arguments, required reversal. *Id.* at 575. We acknowledge that *Manning* is distinguishable because the relatively sparse evidence of the defendant's guilt on the charges at issue in *Manning* led us to question whether the prosecutor's misconduct had swayed the jury. Nevertheless, we find the comments at issue in this case indistinguishable from those in *Manning* in their impropriety, and prosecutors in this circuit should consider themselves well advised to strike such commentary from their repertoires.

## B. Extra–Judicial Consequences of the Verdict

■■■ A prosecutor must refrain from attempting to deflect the jury's attention from the narrow issue of the defendant's guilt or innocence; any attempt to "foist onto the jury responsibility for the extra-judicial consequences of a not-guilty verdict" is improper. *United States v. Whiting,* 28 F.3d 1296, 1302 (1st Cir.1994). Auch contends that the prosecutor committed such a transgression by arguing that a not guilty verdict would result in the biggest day of Auch's life and that he would laugh all the way to the bank.[13]

The government candidly admits that the prosecutor did not choose his words carefully in this portion of the closing argument. We find the prosecutor's lack of discretion particularly troubling in this instance because the comments came towards the end of the government's rebuttal and, as the last words that the jury heard from the trial attorneys, had great potential to cause prejudice. *See Manning,* 23 F.3d at 575 (emphasizing the significance of the timing of improper remarks to the jury).

Nevertheless, the prosecutor's ill-advised rhetoric or pained attempt at humor appears to have been relatively harmless in this instance. The majority of our cases that address a prosecutor's references to the extra-judicial consequences of a jury's verdict involve more sweeping arguments. Typical examples include a prosecutor's attempt to enlist the jurors in the war on

12. The prosecutor said:

> If Tracy is trying so badly to make things up, to convict an innocent man, which he's not trying to do by any stretch of the imagination, but if that's what Tracy is trying to do, why doesn't he try to make Auch seem worse than he is?
>
> Why does Tracy said [sic] that Auch had an unloaded .357 in the car unless that's the truth? ... Why doesn't he have him sitting in there with a fully loaded Uzi submachine gun? Why doesn't he makes [sic] him into a much badder [sic] guy than maybe he is, maybe he was?

> The reason is because Tracy is just telling the truth, you know, whatever the truth may be.

13. The prosecutor said:

> And this, of course, would be the biggest day of all for him, if you were to, in the face of this mountain of evidence against him, ignore it and let him skate free. Let him ride. Let him go. This would be a huge day. This would be the biggest day.
>
> And as the saying goes, it may be inappropriate in this case, he would be laughing at you. He would be laughing all the way to the bank.

drugs, *see Arrieta–Agressot v. United States*, 3 F.3d 525, 527 (1st Cir.1993) ("[T]he defendants are not soldiers in the army of good. They are soldiers in the army of evil, in the army which only purpose [sic] is to poison, to disrupt, to corrupt."), or a demand that the jury prevent the defendant from harming other victims, *see Whiting*, 28 F.3d at 1302 ("exhort[ing] ... the jurors not to 'let other kids be succored [sic] in by [the defendant's] flash, that cash, that deception' "). In this case, the prosecutor's remarks were confined to how Auch would react if the jury rendered a verdict of not guilty. Although the remarks may have been calculated to "excite the jury, invite a partisan response, and distract its attention from the *only* issue properly presented by this case: whether the evidence established [Auch's] guilt beyond a reasonable doubt," *Arrieta–Agressot*, 3 F.3d at 529–30, the prosecutor's remarks were not as far afield as those requiring reversal under the plain error standard.

## CONCLUSION

 Although we find the prosecutor's various transgressions and missteps in the conduct of this trial both disturbing and exasperating, we discern no reversible error. The evidence of Auch's guilt on the charges is plain in the record and leads us to conclude that none of the errors described above—whether considered in isolation or in combination—could have had any meaningful effect on the jury's ultimate verdict. Accordingly, we heed the Supreme Court's admonition against letting the guilty go free to punish prosecutorial misconduct. *See United States v. Hasting*, 461 U.S. 499, 506–07, 103 S.Ct. 1974, 1979, 76 L.Ed.2d 96 (1983). Prosecutors, however, also would do well to heed the Supreme Court's warnings that our recourse is not limited to public handwringing in the pages of the federal reporters. In the appropriate case, the courts will not hesitate to refer an offending prosecutor to the Department of Jus-

tice for further investigation and discipline. *Id.* at 506 n. 5, 103 S.Ct. at 1979 n. 5. (describing this and other options the courts may exercise in the face of a prosecutor's unethical conduct).

For the foregoing reasons, we **AFFIRM**.