UNITED STATES of America,
Appellee,

v.

Rubén RODRÍGUEZ–DE JESÚS,
Defendant, Appellant.

No. 99–1361.

United States Court of Appeals,
First Circuit.

Submitted Sept. 21, 1999.

Decided Feb. 16, 2000.

---

Anita Hill–Adames, Assistant Federal Public Defender, and Joseph C. Laws, Jr., Federal Public Defender, on brief for appellant.

Camille Vélez–Rivé, Assistant U.S. Attorney, Guillermo Gil, United States Attorney, and Jorge E. Vega–Pacheco, Assistant U.S. Attorney, on brief for appellee.

Before TORRUELLA, Chief Judge, STAHL and LYNCH, Circuit Judges.

LYNCH, Circuit Judge.

Rubén Rodríguez–De Jesús (Rodríguez) appeals the denial of his motion for a new trial, which alleged prosecutorial misconduct. Rodríguez argues that the prosecutor's statement that "he [Rodríguez] also lied" was sufficiently prejudicial to warrant a new trial, and that the district court abused its discretion in denying his motion. Given the circumstances in which the statement was made, we affirm the district court's decision.

I

In September 1996, Rodríguez submitted a claim to the Federal Emergency Management Agency (FEMA) for damage caused by Hurricane Hortense to a house that he stated was his principal place of residence. Rodríguez received a $4,915 grant for repairs to the house and a $1,671 grant for rental assistance. On April 22, 1998, Rodríguez was indicted on two counts of fraud against the United States. The first count was for making a false statement in a matter within the jurisdic-

tion of a federal agency, 18 U.S.C. § 1001; the second count was for making a false claim to a federal agency, 18 U.S.C. § 287. The indictment alleged that the house for which Rodríguez had received FEMA assistance had not actually been his principal place of residence at the time of the hurricane. If the house that was destroyed had not been Rodríguez's principal place of residence, he would not have qualified for the grants he received from FEMA; at best, he would have only qualified to receive a loan.

During the trial, Juanita Carrión Vasquez (Carrión), the government's chief witness, testified that she rented the house in question from Rodríguez, and that the house was not Rodríguez's principal residence. Carrión herself requested and received from FEMA rental assistance and compensation for property in the house that was destroyed by the hurricane.

On August 6, 1998, a jury convicted Rodríguez on the first count and acquitted him on the second. Rodríguez was ordered to serve one hour of imprisonment at the U.S. Marshals' office, pay a $100 special monetary assessment, and make restitution of $6,586. Rodríguez made timely motions for judgment of acquittal, Fed.R.Crim.P. 29(c), or, in the alternative, for a new trial, Fed.R.Crim.P. 33, which the district court denied. Rodríguez appealed the denial of his motion for a new trial.

## II

This appeal focuses on one statement by the prosecutor. Prosecution witness Carrión testified that she had been renting the house from Rodríguez for more than three years before the hurricane struck, and that Rodríguez did not live there himself. In his testimony, Rodríguez stated that he had never agreed to rent the house to Carrión, but that he had been letting her and her children stay there for free as a favor. He testified that shortly before the hurricane he had separated from his wife and moved into one of the rooms in the house in which Carrión was living. Carrión denied that Rodríguez had moved into the house.

Rodríguez said that after the hurricane, in an effort to help Carrión get housing assistance, he had lied to Sylvia Guzman, a representative of the Housing Department, by telling her that Carrión had been paying him $300 rent each month. He also testified that he called Guzman back later and confessed to having lied to her about Carrión's having paid rent.

After the defense had rested, the government informed the court that it intended to call Guzman as a rebuttal witness. Out of the presence of the jury, the prosecutor said that Guzman would testify that Rodríguez had admitted lying to her but had not offered any reason for telling the lie. The court suggested that a stipulation could make Guzman's testimony unnecessary, and defense counsel agreed to stipulate that Rodríguez never mentioned to Guzman why he had lied to her. The judge then addressed the jury:

> THE COURT:.... The stipulation is as follows: When the defendant called back Sylvia Guzman [of] the Housing Department, he informed her he had lied about the $300 rent. He did not mention why he lied, but he did call and told her he lied about the $300 rent.

> Is that satisfactory, counsel?

> PROSECUTOR: Yes, and he also lied.

> DEFENSE COUNSEL: I object. It should have been done outside of the presence of the jury.

> THE COURT: Exactly. Approach the bench.

In the sidebar that followed, the prosecutor explained that she disagreed with the inclusion of "about the $300 rent" in the stipulation. The judge then addressed the jury again:

> THE COURT: Let me correct the stipulation....

The parties have agreed that when the defendant, Mr. Rodriguez, called back Sylvia Guzman of the Housing Department and said he had lied in the earlier interview he did not give any reasons to her why he lied.

Okay, that is the stipulation. Is that satisfactory?

PROSECUTOR: Yes, it is.

DEFENSE COUNSEL: Yes.

### III

■■■ Rodríguez contends that the statement by the prosecutor, "and he also lied," affected the trial's outcome, and that therefore the district judge should have granted his motion for a new trial. We review the denial of a motion for a new trial for manifest abuse of discretion. *See United States v. Gonzalez–Gonzalez*, 136 F.3d 6, 12 (1st Cir.1998). The determination of whether prosecutorial misconduct "has so poisoned the well that a new trial is required," *United States v. Manning*, 23 F.3d 570, 574 (1st Cir.1994) (internal quotation marks and citation omitted), involves the weighing of several factors: "(1) the severity of the misconduct; (2) the context in which it occurred; (3) whether the judge gave any curative instructions and the likely effect of such instructions; and (4) the strength of the evidence against the defendant," *id.; see also United States v. Auch*, 187 F.3d 125, 129 (1st Cir.1999) (similar factors).

■■■ We examine each of the *Manning* factors in turn. When reviewing a claim of prosecutorial misconduct, we take a balanced view of the evidence in the record. *See United States v. Roberts*, 119 F.3d 1006, 1008 (1st Cir.1997); *Arrieta–Agressot v. United States*, 3 F.3d 525, 528 (1st Cir.1993).

### A. *Severity of the Misconduct*

Rodríguez argues that the prosecutor's statement "and he also lied" misled the jury into thinking Rodríguez had stipulated to one of the elements of the first count, making a false statement to a federal agency, when in fact the lie to which he stipulated (that the government's chief witness had been paying him rent) was not the lie he was charged with in the first count (that the dwelling for which he made a claim for emergency assistance was his primary residence at the time of the hurricane).

Although it is conceivable that the jury might have understood the prosecutor's remark to refer to the lie charged in the first count, that is not a likely interpretation. First, we note that in this context the exact meaning of the statement "he also lied" is far from self-evident. "[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning...." *United States v. Lilly*, 983 F.2d 300, 307 (1st Cir.1992) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)) (internal quotation marks omitted). Here, the prosecutor made the statement immediately after the judge presented to the jury the stipulation that Rodríguez had called Sylvia Guzman to admit that he had lied to her in an earlier conversation. Under these circumstances, the most plausible conclusion is that the prosecutor's remark ("he also lied") referred to some aspect of Rodríguez's conversations with Guzman. That conversation did not have to do with the lie Rodríguez was charged with in the first count.

Second, this is not a case in which the prosecutor's alleged misconduct was "pervasive," *see Manning*, 23 F.3d at 575, or "repeated," *see Auch*, 187 F.3d at 129. The fact that the challenged statement was an isolated remark made during a four-day trial weighs heavily against a finding that the alleged misconduct was severe. *See United States v. Palmer*, 203 F.3d 55, 58–59 (1st Cir.2000) ("As a one-time misstatement at the end of a four-day trial, the

prosecution's comment was neither so egregious nor so pervasive as to poison the well.")

### B. *Context*

The context of the prosecutor's statement also weighs against a conclusion that a new trial is required. Challenged comments are considered in their broader context, not in isolation. *See Auch*, 187 F.3d at 129. As the government points out in its brief, the context here is one in which the defendant himself repeatedly said in front of the jury that he had lied. While being questioned by his own attorney, Rodríguez stated three times that he had lied to Guzman in order to help Carrión. During cross-examination, he acknowledged again that he had lied to Guzman. Furthermore, the prosecutor's statement was made between the judge's presentation of two versions of the stipulation, both of which stated that Rodríguez had told Guzman that he had lied to her. In a context in which the defendant repeatedly stated that he had lied, and even stipulated to the fact, the cumulative impact of the prosecutor's remark is negligible.

### C. *Curative Instructions and Strength of the Evidence Against the Defendant*

In light of the limited severity of the misconduct and the context in which it occurred, the last two factors can be dealt with briefly. First, while in some circumstances the lack of a curative instruction may weigh in favor of a new trial, *see, e.g., Manning*, 23 F.3d at 575, we do not believe it does here. Although the judge gave no curative instructions per se, he expressed his agreement with defense counsel's objection at the time the prosecutor made the challenged remark, and later instructed the jury that statements by counsel were not to be considered as evidence. Second, while the evidence against Rodríguez was not overwhelming, *cf. Auch*, 187 F.3d at 130, it was not so slight that the single remark being challenged could have tipped the balance.

## IV

 "The remedy of a new trial is rarely used; it is warranted only where there would be a miscarriage of justice or where the evidence preponderates heavily against the verdict." *Gonzalez–Gonzalez*, 136 F.3d at 12 (internal quotation marks and citation omitted). We do not condone the prosecutor's remark; as this court has stated, it is highly improper for a prosecutor to call a defendant a liar. *See United States v. Rodríguez–Estrada*, 877 F.2d 153, 158–59 (1st Cir.1989). Our review of the record, however, convinces us that the prosecutor's statement did not affect the outcome of the trial. The district court's denial of Rodríguez's motion for a new trial is *affirmed.*