UNITED STATES of America,
Plaintiff,

v.

Manuel GONZALEZ–GONZALEZ,
Defendant.

No. Crim. 93–0318(PG).

United States District Court,
D. Puerto Rico.

July 5, 2000.

Rafael F. Castro–Lang, San Juan, PR, for Defendant.

Manuel Gonzalez–Gonzalez, White Deer, PA, pro se.

Guillermo A. Gil–Bonar, Jose A. Quiles, U.S. Atty's Office District of P.R., Criminal Division, Hato Rey, PR, Matthew H. Thomas, U.S. Atty's Office Criminal Division, San Juan, PR, for U.S.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

On February 15, 1996, a jury convicted defendant Manuel González–González (hereinafter González) of drug conspiracy and money laundering offenses. Thereafter, González filed two Rule 33 motions for

new trial, which were denied on December 6, 1996. The First Circuit Court of Appeals denied González' appeal on February 5, 1998. Pending before the court is González' third motion for a new trial (Docket No. 733) filed on May 19, 1999. The government responded to González' motion on July 29, 1999. (Docket No. 741.)

Defendant González contends that he is entitled to a new trial based on newly discovered evidence because: (1) the prosecutor tried to induce a potential witness to testify falsely, (2) the prosecutor falsely presented evidence suggesting that Jancho and Flaco were the same individual, (3) two of the government's witnesses allegedly committed perjury, (4) Brady, Giglio and Jencks material pertaining to Luz Marina–Giraldo's cooperation in the case pending in the Southern District of Florida was not provided to the defendant, and (5) the prosecutor failed to disclose evidence relative to the ownership of a specific residence.

### Rule 33—Standard of Review

■■■ Federal Rule of Criminal Procedure 33 empowers the court to grant a new trial "if required in the interest of justice." "The remedy of a new trial is rarely used; it is warranted only where there would be a miscarriage of justice or where the evidence preponderates heavily against the verdict." *United States v. Rodriguez–De Jesus*, 202 F.3d 482, 486 (1st Cir.2000) (citing *United States v. Gonzalez–Gonzalez*, 136 F.3d 6, 12 (1st Cir. 1998)). In order to prevail on his motion for new trial based upon newly discovered evidence, González must show that "(1) the evidence was either unknown or unavailable at the time of trial; (2) the failure to unearth it was not attributable to a lack of diligence on his part; (3) the evidence is material (as opposed to being merely cumulative or impeaching); and (4) the evidence is sufficiently compelling that it would probably result in an acquittal should the court order a retrial." *United States v. Alicea*, 205 F.3d 480, 487 (1st Cir.2000) (citing *United States v. Huddle-*

*ston*, 194 F.3d 214, 218 (1st Cir.1999)); *see also United States v. Josleyn*, 206 F.3d 144, 151 (1st Cir.2000); *United States v. Montilla–Rivera*, 171 F.3d 37, 39–40 (1st Cir.1999). Defendant González bears the burden of establishing each of these requirements. "If any of the four factors [is] lacking, then a Rule 33 motion must be denied." *United States v. Falu–Gonzalez*, 205 F.3d 436, 442 (1st Cir.2000) (citing *United States v. Natanel*, 938 F.2d 302, 313 (1st Cir.1991)).

■■■ The standard of review applied to the usual motion for a new trial based on newly discovered evidence is more lenient than the one applied in cases where the so called "new evidence" was in the state's possession and the prosecution failed to disclose it. *See, e.g., United States v. Sanchez*, 917 F.2d 607, 617 (1st Cir.1990) (citing *United States v. Agurs*, 427 U.S. 97, 111, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). Therefore, it is not surprising that defendant González has tried to "shoehorn as much of the [alleged] new evidence into the Brady category as possible." *United States v. Josleyn*, 206 F.3d at 152. "Suppression by the prosecution of evidence favorable to an accused upon [the defendant's] request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Strickler v. Greene*, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (citing *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). Impeachment evidence is "exculpatory" evidence under *Brady*. *United States v. Ingraldi*, 793 F.2d 408, 411 (1st Cir.1986) (citing *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).

### Alleged New Evidence

*a) Wilfredo Vélez' sworn statements*

■■■ Defendant presents sworn statements by Wilfredo Vélez (a potential witness that did not testify at González' trial)

detailing conversations between him and federal prosecutor Francisco Rebollo. (Docket No. 733, Exhibits 9 and 10.) González asserts that Mr. Rebollo incited Vélez to testify falsely against him and that this is proof of the prosecution's monstrous scheme by which witnesses were allegedly bribed or asked to testify against González. In essence, González contends that the prosecution fabricated a case against him.

Not only is González' argument unsupported by evidence, but this court has already addressed this same issue in one of González' previous motions for a new trial. In its order of December 3, 1996 (page 4, footnote 1) this court made clear that it lacked jurisdiction to address the allegation that the prosecution had attempted to influence a potential witnesses' testimony, given that Vélez' sworn statements were dated June of 1995 and as such did not constitute new evidence.

### b) Agent Siberio's testimony at a Frank's hearing on July 30, 1996

In his motion, González claims that the prosecutor made misrepresentations to the jury by portraying Jancho and Flaco as the same individual (the individual who supervised defendant González' drug smuggling activities).[1] González brings forth as "new evidence" the testimony of Special Agent Sergio Siberio at a Frank's hearing conducted on July 30, 1996, where Jancho and Flaco are depicted as two separate individuals.

A reading of the trial transcript reveals that agent Siberio's testimony is not new evidence, but rather evidence which corroborates what already was presented at trial. During the direct examination of one of the government's witnesses, Jancho and Flaco are clearly portrayed as two distinct individuals. (*See* Trial Transcripts, hereinafter "Tr.," at 1142–49 and 1168.) Therefore, agent Siberio's testimo-

ny at the Frank's hearing is not new evidence. *See, e.g., United States v. Alicea,* 205 F.3d 480, 487 (1st Cir.2000) (in order to prevail in a motion for new trial a defendant must show that the evidence was either unknown or unavailable at the time of trial). This evidence merely mirrors the one presented at trial by the government.

### c) the alleged perjured testimony

"[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs,* 427 U.S. at 103, 96 S.Ct. 2392 (footnotes omitted). "Perjury occurs when a 'witness testifying under oath or affirmation ... gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *United States v. Tavares,* 93 F.3d 10, 14 (1st Cir.1996) (citing *United States v. Dunnigan,* 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993)).

González moves for a new trial pursuant to Federal Rule of Criminal Procedure 33 declaring, *inter alia,* that he has discovered new evidence showing that two of the government witnesses, Luz Marina Giraldo and Roberto Garratón, committed perjury at trial.

#### 1) Roberto Garratón:

González asserts that Garratón's testimony at trial was false. In support of his contention, González has presented a handwritten note dated June 17, 1998, by inmate José Jaime González, Garratón's housemate at Eglin Camp, stating that during August of 1997 he had a conversation with Garratón in which he admitted that he had never been involved in a drug

---

**1.** Defendant alleges that alleged misrepresentation was done purposefully· so as to admit certain evidence into the trial that would otherwise be inadmissible. (See Docket No. 733, at 7–8.)

transaction with defendant González. (Docket No. 733, Exhibit 8.) During trial, however, Garratón provided damaging testimony against González when he testified as to the defendant's role in importing and distributing 69 kilograms of cocaine. (*See* Tr. at 399–04.)

The newly discovered evidence of Garratón's alleged perjury was unknown to defendant given that the alleged conversation between Garratón and inmate José Jaime González occurred sometime in August of 1997. It is assumed that the unavailability of this evidence at the time of trial was not due to a lack of diligence on the part of the defendant. Thus, the relevant issue is whether González can prove that the newly discovered evidence would "probably ... lead a jury to acquit him the second time around." *United States v. Huddleston*, 194 F.3d at 221. "[W]hen a defendant grounds a motion for a new trial in a criminal case on a claim that he has newly discovered perjury on the part of one or more government witnesses, the conviction nonetheless should stand unless the force of the newly discovered evidence (i.e., the fact and nature of the perjury) and the content of the corrected testimony are such that an acquittal probably would result upon retrial." *United States v. Huddleston*, 194 F.3d at 221.

■ First, "it is well established that recantations are generally viewed with considerable skepticism." *United States v. Carbone*, 880 F.2d 1500, 1502 (1st Cir.1989) (citations omitted).[2] In the instant case, there is substantial cause to disbelieve Garratón's alleged recantation given that his testimony was corroborated by that of Ricardo Rivera. (*See* Tr. at 81–95.) Second, the record evinces that the jury had ample evidence of González' guilt. There was testimony on the part of another government witness, Luz Marina Giraldo, which also corroborates defendant González' involvement in the charged drug transaction. Moreover, the testimony of these witnesses was corroborated by the observations and investigation conducted by a sergeant of the Puerto Rico Police Department and a special agent of the United States Customs Service. (*See* Tr. at 340–51 and 1345–356.) In view of the amount of evidence against defendant González, it is difficult to envision any realistic likelihood that this new evidence would probably result in an acquittal.

2) Luz Marina Giraldo

■ Defendant further argues that the government pressured its main witness, Luz Marina Giraldo, to commit perjury. This argument differs from the one previously discussed: it is a combination of alleged prosecutorial misconduct[3] and newly discovered evidence inasmuch as González claims that he recently discovered this evidence from statements made by two inmates.

González presents forth the affidavits of two convicted felons, David Ortiz Medina and Ernesto Padilla Améstica in support of his position. (*See* Docket No. 733, Exhibit 1 and Docket No. 741, Exhibit C.) In the affidavits, dated February 17, 1997 and February 20, 1997, respectively, both in-

---

**2.** In *United States v. Carbone* the court refused to grant a motion for a new trial where a government's witness allegedly told a fellow inmate that his testimony implicating the defendant in a drug transaction was perjured. In *Carbone,* the court conducted the analysis under the test described in *Larrison v. United States,* 24 F.2d 82, 87 (7th Cir.1928). However, the First Circuit has recently repudiated that test for a more stringent one. *See United States v. Huddleston,* 194 F.3d at 219–21.

**3.** González' claim of prosecutorial misconduct is unsubstantiated since the only evidence of said misconduct is the recantation of Marina–Giraldo (who has since been deported to Colombia), in which she alleges that the prosecutor and her attorney motivated her to lie as to González' involvement in the drug conspiracy.

González can not at this point in time (four years after trial) make a general allegation of prosecutorial misconduct other than one involving non-disclosure of Brady/Giglio materials.

mates attest to overhearing conversations between Luz Marina Giraldo and defendant González while en route to Puerto Rico. In said conversations, González questioned the veracity of Marina Giraldo's testimony and she allegedly admitted that she lied because both the prosecutor and her attorney made clear that she would get a reduced sentence if she testified against González.

There are several flaws within the alleged recantation of Luz Marina Giraldo. First, the inmates' affidavits fail to indicate the date they allegedly overheard the conversations between defendant González and Luz Marina Giraldo. The affidavits only contain a scant reference to the location in which the alleged conversations took place. It is thus almost impossible for the court to ascertain whether this "newly discovered" evidence could have been unearthed before if the defendant had acted with due diligence. Second, the only evidence of Marina–Giraldo's alleged perjury is the affidavits of two convicted felons. This evidence is viewed by courts with skepticism. *See, e.g., United States v. Carbone,* 880 F.2d at 1502; *see also United States v. Montilla–Rivera,* 171 F.3d at 42 (post-conviction exculpatory statements by co-conspirators are inherently suspect since the person making the statement is in a position to say whatever he/she wants). Third, and most important, at trial there was extensive evidence of González' drug smuggling and money laundering operation in addition to Marina–Giraldo's testimony. (*See* Tr. at 81–95, 112–14, 116–20, 223–24, 399–04, 1870–889.) If this court were to believe that Luz Mariana Giraldo's testimony was false, then it would follow that all the corroborating evidence presented at trial "had to be not only false, but part of a deliberate and calculated scheme." *United States v. Carbone,* 880 F.2d at 1502. Thus, the court finds that there is no reasonable probabili-

ty that the evidence contained in these two affidavits would result in González' acquittal upon retrial.

### Allegations of Prosecutorial Non-disclosure Brady/Giglio Material

Defendant González' motion for a new trial is replete with general and unsubstantiated allegations of prosecutorial misconduct in an effort to characterize some of the alleged new evidence as Brady material. Some of this evidence is exculpatory and will be analyzed under Brady and its progeny.

*a) The June 29, 1995 proffer and the FBI report of July 8, 1995*

González claims that during trial the prosecution misled the court as to the status of Marina–Giraldo's case in the Southern District of Florida. Specifically, defendant contends that the prosecutor failed to disclose Giglio materials pertaining to Marina–Giraldo's dealings with the Florida case.

In its opposition to González' motion for new trial the government has presented a letter dated June 29, 1995, evidencing that Mariana–Giraldo entered into a proffer immunity agreement with the United States Attorney's Office for the Southern District of Florida relative to the Miami indictment. (Docket No. 741, Exhibit G.) The government concedes that Marina–Giraldo was debriefed in Miami on June 30 and July 6 of 1995 in relation to her criminal conduct in Florida. There is a July 8, 1995 FBI report summarizing these debriefings.[4] On August 22, 1996, six months after González' trial in Puerto Rico, Marina–Giraldo entered into a cooperation/plea agreement with the prosecutor's office in Florida. (Docket No. 741, Exhibit I.)

In its motion, the government concedes that neither the proffer/immunity agree-

---

4. The government has not provided the FBI report but rather an affidavit by FBI Special Agent Stephen Kling (Docket 741, Exhibit H), stating that he debriefed Marina–Giraldo during June and July of 1995 and that said debriefing was limited to her criminal conduct in Miami.

ment of June 29, 1995, nor the FBI report of July 8, 1995, were provided to defendant González during discovery.[5]  Nonetheless, the government argues that the non-disclosures of the "non-material" evidence does not warrant a new trial.  I agree.

■ A new trial is not automatically required "whenever a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict. . . ." *United States v. Dumas,* 207 F.3d 11, 15 (1st Cir.2000) (citing *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)).  Instead, "[a] finding of materiality is required under Brady." *Id.* at 154, 92 S.Ct. 763.  According to Brady, evidence is material "only when there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Dumas,* 207 F.3d at 15 (citing *United States v. Bagley,* 473 U.S. at 682, 105 S.Ct. 3375). In other words, defendant González "may prove a Brady violation by showing that 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *United States v. Dumas,* 207 F.3d at 15 (citing *Kyles v. Whitley,* 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *United States v. Cunan,* 152 F.3d 29, 34 (1st Cir.1998)).

■ There is no reasonable probability that the outcome of González' case would have been changed by the availability of the undisclosed evidence (the FBI report and the Marina–Giraldo's proffer agreement in her Miami case).  Certainly, this evidence could have been used to impeach Marina–Giraldo; but its effect would have been merely cumulative.  The record shows that Marina–Giraldo was thoroughly cross-examined as to her cooperation with the prosecutor's office in Miami.  (*See* Tr. at 1904–915.)  In addition, Mariana–Giral-

do was impeached by questioning about her expectations of lenient treatment and thus her truthfulness was put into doubt during trial.  (*See* Tr. at 1915.)  *See, e.g., United States v. Shea,* 211 F.3d 658, 675–76 (1st Cir.2000) (non-disclosure of impeachment evidence did not warrant a new trial were said evidence was merely cumulative).  Thus, I find that the unavailability of the cumulative evidence regarding to the Miami case does not undermine confidence in the fairness of the trial.

*b)  The recorded conversation between Dávila Sánchez and the cooperating witness*

■ Defendant González presents the transcript of a consensually recorded conversation of December 28, 1993 between Jorge Dávila Sánchez and a cooperating witness which makes reference to a shipment of 1000 pounds of marihuana. (Docket No. 733, Exhibit 12.)  González asserts that the prosecutor failed to provide him with said tape during discovery, and that the information contained therein suggests that it was Jorge Dávila Sánchez, rather than himself, that was involved in the marihuana shipment depicted in Luz Marina Giraldo's testimony at trial.  In other words, defendant González has presented this alleged "new evidence" in an effort to prove that Luz Marina Giraldo perjured herself and that the prosecution knew of said perjury.

This argument is meritless.  The taped conversation makes reference to a marihuana load of 1000 pounds versus the 1500 pounds load described by Luz Marina Giraldo in her testimony, indicating that the conversation might have been relative to some other transaction.  In addition, nothing in the taped conversation exculpates defendant González from his involvement in the transaction described by Marina Giraldo in her testimony.  If anything, the

---

5.  The government argues that the FBI report is not discoverable under Brady or Giglio, given that they pertain to the Florida case and

not the Puerto Rico case.  I assume that these materials qualify as Brady/Giglio materials.

only information that this taped conversation shows is that Jorge Dávila Sánchez was involved in a transaction of 1000 pounds of marihuana with a woman, which the defendant insinuates is Luz Marina Giraldo. González has failed to show how this conversation is even remotely relevant to the counts of conviction, much less evidence of perjured testimony or Brady material.

*c) Grand Jury testimony of Agent Siberio*

González contends that the prosecutor failed to disclose the grand jury testimony of Special Agent Sergio Siberio of August 10, 1994. Defendant contends that this evidence would have revealed the true owner of the house searched at Uraneta Street, No. 834. González alleges that this would have been important information given that it establishes that Evelyn Santiago Mora, Angel Santiago Mora's mother was the true owner of the property in which drugs were seized. González asserts that this new evidence is important because it would have revealed the extensive involvement of Santiago Mora's mother in the drug conspiracy. This evidence, defendant contends, would have put into question the credibility of Angel Santiago Mora's testimony at trial and his motive for cooperating with the government (i.e., protecting his mother).

In support of the aforementioned argument, González makes reference to Siberio's testimony in the Frank's hearing of July 30, 1996, and Siberio's grand jury testimony of August 10, 1994. The prosecution's failure to disclose Siberio's grand jury testimony does not rise to the level of a Brady/Giglio violation.

This "new evidence" is cumulative, given that it would have allowed González' attorney to further impeach Angel Santiago Mora. A look at the trial transcript reveals that Angel Santiago Mora was extensively cross-examined as to the issue of his mother's involvement in the drug conspiracy. (Tr. at 1227.) In addition, this witness' motivation for cooperating with the government was also brought forth by defendant's attorney during cross-examination. (Tr. at 1231.) As the government correctly points out in its motion, the defendant could have obtained by exercising due diligence information of the ownership of said property, given that under Puerto Rico law ownership of a home is a matter of public record.

### Conclusion

In view of the above, the court finds that the new evidence presented by defendant González, viewed individually and in conjunction (for its cumulative effect) does not undermine the government's case as to give rise to a reasonable probability of acquittal on retrial. Therefore, the motion for a new trial is hereby denied.

SO ORDERED