BOUDIN, Circuit Judge,
concurring.
Motions for a new trial in criminal cases, based on improper remarks by the prosecutor in closing, are often an uphill effort. The government, unlike defense counsel, can pursue strong eases and pass on weak ones, and so many of its cases are strong: eye-witness testimony by eye-witnesses, audio or video tape, and co-conspirators who turn up as prosecution witnesses confront defendants who, often hindered by prior criminal records, chose not to take the stand.
Prosecutors do sometimes make statements that judges find impermissible. Yet the variables are numerous and work against easy rules of thumb: statements may be improper for different reasons and in varying degrees; they may be fine in some contexts and not in others (e.g., depending on the trial evidence); provocation or fair response may mitigate or excuse; corrective instructions may or may not be given and, if given, vary in their force; and judges also vary in what they think allowable comment.
Complicating the equation is the requirement of harm: if no objection was made, the defense must show (among other things) that an objectionable statement caused prejudice.[17] This is a demanding requirement which, along with other Olano factors, United States v. Olano, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), explains why admonitions are not uncommon but reversals — where no objection was made, are comparatively rare. And, if objection was made, the government can argue that it was harmless — a much tougher showing, to be sure (see note 19, below); but sometimes the impropriety is marginal and curative instructions may have lessened the impact.
Only where bad faith is shown is the need for harm sometimes disregarded.[18] But finding bad faith is not easy: trials raise the emotional level and much in closing argument is spontaneous. Further, a court may be reluctant to reverse a reliable conviction because, in Cardozo’s famous phrase, “the constable has blundered.” Cf. United States v. Auch, 187 F.3d 125, 133 (1st Cir.1999) (noting Supreme Court’s “admonition against letting the guilty go to punish prosecutorial misconduct.”).
The present case, quite unusual, combines an undisputedly improper and significant remark, with a defense case that is forceful and well developed. The statement that “[tjhirty one potential lives were saved” can be understood (even if not so intended) as a claim that the defendants were out to kill people, which was neither the charge nor the subject of any evidence. The government concedes the remark was improper. How far other remarks standing alone were improper can be and is disputed, but several of them, given the quoted statement, tended to emphasize its thrust.
Prosecutors have said worse things, but a timely objection was made so the question is whether the government can show that the remark was harmless. Very of *24 ten, in a case like this one, there would be unquestioned police testimony that they caught the defendants with guns and drugs and cash,, and, there would be nothing from the defense side except silence. In that situation, a prosecutor’s overstatement rarely looks like it had any effect; and a new trial, given such evidence, appears a waste of time'.
This case is different. Six witnesses, at least four of whom had nothing specific to do with the defendants, testified that the police had fabricated the alleged seizure: that they had not taken the guns and drugs from the defendants or their vehicles, had searched the defendants but found nothing, had disappeared into the woods and returned with a bag and (according to two witnesses) had at the police station taken weapons and drugs from the bag. Other defense evidence is described in the decision.
This does not show that the defendants were bound to be acquitted. The witnesses from the housing project may have been friends of the defendants, hostile to the police or subject to intimidation. But given the objection and substantial impropriety of the main comment, the government had to show that the remark or remarks could not have affected the result, that is to say, (since the jury’s mind cannot be read), that the chances are extremely low that the outcome was affected.[19]
Here, the government cannot meet this burden. As in United States v. Azubike, 504 F.3d 30, 42 (1st Cir.2007), where a new trial was required, “the evidence was close and the misstatement went to a central issue ...” Bad faith is not an issue and the defense took liberties of its own asking the jury to rely on unsupported factual claims. But in a case with a substantial defense, the prosecutor’s emotional and unsupported reference to potential mass murders is enough for a new trial.

. See United States v. Vazquez-Botet, 532 F.3d 37, 56 (1st Cir.2008) (asking whether misconduct " ‘so poisoned the well’ that the defendant must be given a new trial.”) (quoting Manning, 23 F.3d at 574); United States v. Laboy-Delgado, 84 F.3d 22, 29 (1st Cir.1996).

. Compare United States v. Potter, 463 F.3d 9, 22-25 (1st Cir.2006), and United States v. Mejia-Lozano, 829 F.2d 268, 274 (1st Cir.1987), with United States v. Mooney, 315 F.3d 54, 60 (1st Cir.2002).

. E.g., United States v. Lizardo, 445 F.3d 73, 87-88 (1st Cir.2006), cert. denied 549 U.S. 1007, 127 S.Ct. 524, 166 L.Ed.2d 390 (2006)(“any possible prejudice was relatively insignificant”); See Potter, 463 F.3d at 24 (no “substantial chance — let alone a likelihood— of changing the outcome”).