# United States Court of Appeals
## For the First Circuit

No. 17-1942

UNITED STATES OF AMERICA,

Appellee,

v.

THOMAS CORLISS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. District Judge]

Before

Lynch, Selya, and Boudin,
Circuit Judges.

Robert L. Sheketoff on brief for appellant.
Andrew E. Lelling, United States Attorney, and Mark T. Quinlivan, Assistant United States Attorney, on brief for appellee.

March 27, 2019

**BOUDIN**, **Circuit Judge**.  On June 12, 2017, following a nine-day trial, a jury convicted Thomas Corliss of ten counts of mail fraud, 18 U.S.C. § 1341, and one count of embezzlement from an organization receiving federal-program benefits, 18 U.S.C. § 666(a)(1)(A).  He was sentenced on September 7, 2017, to concurrent prison terms of one year and one day, to be followed by one year of supervised release.  Corliss now appeals from his conviction.

At trial, the government presented evidence that between March and September 2015, Corliss, who was a Lieutenant in the Quincy Police Department, submitted fraudulent detail and overtime timesheets, which double counted time he worked.  Corliss reported that he worked details at the same time as regular shifts, details at the same time as other details, training at the same time as regular shifts, and overtime at the same time as regular shifts.  In one instance, Corliss claimed he worked three details while taking a vacation day.

To support its case, the government introduced work schedules, detail timesheets, detail invoices, overtime calendars, and payroll documents.  The government also called officers and city officials to testify.  The government's principal witness was Captain John Dougan, who serves as the Executive Officer of the Quincy Police Department.  Captain Dougan testified about the policies and procedures governing Quincy Police scheduling and compensation, including the collective bargaining agreements

- 2 -

between the City of Quincy and its police officers.  He also explained the initial investigation into what he called Corliss's "double-dipping."

Corliss claims the district court erred during Captain Dougan's testimony by improperly restricting cross examination. The court prevented Corliss from asking whether any other police officers faced disciplinary action for violating the department's policy on overlapping shifts.  Corliss argues that Captain Dougan's likely concession--that no other police officers faced disciplinary action for violations like those Corliss committed-- would have helped show his actions were consistent with permitted practices, negating any specific intent to defraud.

Likely, the testimony was relevant, cf. Fed. R. Evid. 401, although that is a precondition and not a guarantee of admissibility.  The government says that Corliss did not make this theory of relevance clear to the district court, see United States v. Malik, 928 F.2d 17, 20 (1st Cir. 1991), but Corliss's attorney proposed in his opening statement that police leadership consciously avoided disciplining other officers for similar conduct and that Corliss lacked the specific intent to defraud.

Given the trial judge's "wide latitude" to set reasonable limits on cross examination, Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986), the district court might have deemed the testimony's value outweighed by its risk of misleading the jury by

implying that Corliss's behavior was proper because others who engaged in similar conduct were not disciplined, see Fed R. Evid. 403, but the judge did not explain his ruling.

Yet even supposing a properly preserved claim of error, a new trial is unnecessary when the error is harmless. Fed. R. Crim. P. 52(a). Here, Corliss's lone witness examined daily rosters and detail sheets during the time period Corliss double-dipped and offered a chart that, so far as we can tell, showed other officers violated the department's policy on overlapping shifts. Also, Captain Dougan admitted he was "sure" that "a lot of people" violated the policy and acknowledged leadership did not investigate other officers. So, limiting cross examination did not stop the jury from hearing Corliss's argument and the supporting evidence.

Corliss further argues that the district court improperly permitted Captain Dougan to testify regarding the meaning of the collective bargaining agreement. Corliss explains that his theory at trial was that the collective bargaining agreement permitted an officer to accrue pay for multiple activities simultaneously. In Corliss's view, the district court erred when it allowed Captain Dougan to testify on re-direct that "[a]ccording to the collective bargaining agreement," Corliss could not properly claim that he worked motorcycle training at the same time he worked details.

Corliss likely waived any objection to Captain Dougan's invoking the collective bargaining agreement when Corliss's attorney himself elicited just such testimony from Captain Dougan on cross examination. See Willco Kuwait (Trading) S.A.K. v. deSavary, 843 F.2d 618, 624-25 (1st Cir. 1988). When questioning Captain Dougan about the motorcycle training, Corliss's attorney asked Captain Dougan not only to interpret the collective bargaining agreement but also to apply the agreement's terms to a hypothetical situation.

Corliss says that Captain Dougan's testimony was "[o]ver the defendant's objection." Most of Corliss's objections were that the prosecutor was leading Captain Dougan. When Corliss's attorney objected to questioning Captain Dougan on the collective bargaining agreement, he simply stated "[o]bjection" without further explanation. But to preserve a claim, a litigant must "call his specific objection to the attention of the trial judge," United States v. Piva, 870 F.2d 753, 759 (1st Cir. 1989) (internal quotation marks and brackets omitted), which Corliss's arguably unexplained objection failed to do here.

Anyway, assuming a preserved objection, Corliss's attorney himself questioned Captain Dougan about the collective bargaining agreement's provisions on training, detail, and overtime compensation. This line of questioning, if it did not waive Corliss's claim, opened the door to follow-up questions on

re-direct on related provisions.  See United States v. Marin, 523 F.3d 24, 28–30 (1st Cir. 2008).  Therefore, no error occurred.

Corliss's final claim on appeal is that the government's closing argument, which included photographs of government witnesses that were not admitted as evidence, represents prosecutorial misconduct warranting a new trial.  During its closing, the government displayed a PowerPoint slide that included pictures of Corliss and members of Corliss's unit who testified for the government at trial.  The picture of Corliss had been admitted as evidence, but not so the pictures of the others.

After Corliss's attorney objected, the court instructed the prosecutor to take down the pictures and told the jury that they should disregard the pictures.  But apparently the prosecutor's slideshow happened several more times to hit on unadmitted pictures, which Corliss now says was prosecutorial misconduct warranting a new trial.  See United States v. Auch, 187 F.3d 125, 129 (1st Cir. 1999).

Here, the conduct, even if more than accidental, did not "so poison[] the well that the trial's outcome was likely affected."  United States v. Joyner, 191 F.3d 47, 54 (1st Cir. 1999) (internal quotation marks omitted).  During the government's closing, the trial court instructed the jury twice to disregard the pictures and in its instructions reminded the jury to disregard any excluded evidence.  United States v. Zarauskas, 814 F.3d 509,

516 (1st Cir. 2016).  Given the government's powerful evidence of guilt, conviction would hardly have been avoided absent the witnesses' pictures.

**Affirmed**.