## Felix Santiago *vs.* Commonwealth.

Suffolk. March 9, 1998. - April 14, 1998.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*Juvenile Court,* Jurisdiction. *Practice, Criminal,* Juvenile delinquency proceeding. *Delinquent Child. Jurisdiction,* Juvenile delinquency proceeding. *Constitutional Law,* Ex post facto law. *Due Process of Law,* Retroactive application of statute. *Statute,* Amendment, Retroactive application, Construction.

The provisions of the 1996 amendment to G. L. c. 119, § 72, as appearing in St. 1996, c. 200, § 13 (*b*), which extended the Juvenile Court's jurisdiction over certain juvenile defendants until their twenty-first birthday, were clearly applicable only prospectively, that is, only to offenses allegedly committed on or after October 1, 1996, with the result that the Juvenile Court lacked jurisdiction to retry a twenty year old defendant whose conviction for a murder occurring on June 5, 1994, was reversed on appeal. [301-303]

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on February 4, 1998.

The case was reported by *Fried,* J.

*Willie J. Davis* for the plaintiff.

*John P. Zanini,* Assistant District Attorney (*James W. Coffey,* Assistant District Attorney, with him) for the Commonwealth.

Ireland, J. A jury in the Boston Juvenile Court found Felix Santiago (defendant) delinquent by reason of several charges, including murder in the first degree.[1] The charges stemmed from a criminal episode that occurred on June 5, 1994, when the defendant was sixteen years old.[2] At that time, the Juvenile Court's jurisdiction over the defendant, while the case against

---

[1]The defendant was the subject of a transfer hearing in which the Commonwealth sought to have the indictments against him tried as criminal matters in the Superior Court. A Juvenile Court judge denied the transfer, and, hence, the indictments were tried as juvenile matters. See *Commonwealth* v. *Santiago,* 425 Mass. 491, 492 n.1 (1997).

[2]The defendant was born July 31, 1977.

him was pending, extended until his nineteenth birthday. See G. L. c. 119, § 72, as amended through St. 1992, c. 398, §§ 4, 5 ("Nothing [in G. L. c. 119] shall . . . give any division of the juvenile court department any power or authority over a person after he has attained his nineteenth birthday").

On July 21, 1997, nine days shy of the defendant's twentieth birthday,[3] we reversed the murder conviction (the only conviction appealed from) and remanded the matter to the Juvenile Court for a new trial. See *Commonwealth* v. *Santiago*, 425 Mass. 491 (1997). The defendant then moved in the Juvenile Court to dismiss the murder indictment, arguing that the Juvenile Court lacked jurisdiction to retry him because he had since attained his nineteenth birthday.

The Juvenile Court judge disagreed and, so, denied the motion. In effect, the judge reasoned that the 1996 amendment to G. L. c. 119, § 72, as appearing in St. 1996, c. 200, § 13 (*b*), which extends the Juvenile Court's jurisdiction over certain juvenile defendants until their twenty-first birthday, applied to the defendant, whose case remained pending. The defendant next petitioned a single justice of this court for relief under G. L. c. 211, § 3, claiming that no other avenue of appellate relief was available to him should he be tried by the Juvenile Court and once again be found delinquent by reason of murder. The single justice reserved and reported the matter to the full court for determination.

Simply put, the question before us is whether the Juvenile Court's jurisdiction over the defendant terminated when the defendant turned nineteen (according to G. L. c. 119, § 72 [1994 ed.], in effect at the time of the incident) or whether jurisdiction continues until the defendant reaches the age of twenty-one on July 30, 1998 (see G. L. c. 119, § 72 [1996 ed.]).[4] Stated another way, the question is whether the present statute is to have retroactive effect, thus giving the Juvenile Court jurisdiction until July 30, 1998, to retry the defendant and, if found delinquent, to commit him to the Department of Youth Services.

The defendant argues that retroactive application would violate ex post facto provisions in art. 1, § 10, of the Federal

---

[3]"Under the common law and the law of the Commonwealth, each year a person attains his or her next age on the day before the anniversary of his of her birth." *Apkin* v. *Treasurer & Receiver Gen.*, 401 Mass. 427, 428 n.3 (1988).

[4]See note 3, *supra*.

Constitution and art. 24 of the Massachusetts Declaration of Rights. In support of that contention, he suggests that retroactive application would adversely affect certain substantive rights he might have at a retrial, including the right to pursue the same theory of defense he used in his first trial, viz., that he did not initiate the shootout in which the victim was killed and did not fire the fatal shot but, rather, returned fire in self-defense.[5]

The Commonwealth counters that the measure extending Juvenile Court jurisdiction over certain defendants until their twenty-first birthday is fundamentally procedural in nature and does not adversely affect any of the defendant's substantive rights. Hence, it does not offend constitutional prohibitions against ex post facto laws. Retroactive application of the new provision, according to the Commonwealth, touches none of the special instances described in *Calder* v. *Bull*, 3 U.S. (3 Dall.) 386 (1798), that make out the usual ex post facto violation.

The provisions within St. 1996, c. 200, § 13 (*b*), do not retrospectively make criminal an act that was *not* criminal when done; do not aggravate or make greater any particular criminal offense; do not increase the punishment for any criminal offense; and do not alter the evidentiary burden required for conviction of a criminal offense or eliminate a defense available when a particular crime was committed.[6] See *Commonwealth* v. *Bargeron*, 402 Mass. 589, 590-591 (1988), quoting and discussing *Calder* v. *Bull*, *supra* at 390. See also *Collins* v. *Youngblood*, 497 U.S. 37, 42, 50-52 (1990), overruling two earlier Supreme Court cases that had expanded ex post facto protections beyond the formulation in *Calder* v. *Bull*, *supra*, and reemphasizing that the meaning of the Federal ex post facto clause may be found exclusively in the *Calder* decision.

---

[5]In *Commonwealth* v. *Santiago*, *supra* at 504, we rejected that theory, stating that a defendant who "choos[es] to engage in a shootout . . . may be the cause of a shooting by either side because the death of a bystander is a natural result of a shootout [which] could not occur without participation from both sides." We also stated that the Commonwealth could proceed on retrial on the theory that the defendant could still be found guilty of murder in the first degree even if his opponent fired the fatal shot. *Id.* at 503 & n.5.

[6]*Commonwealth* v. *Santiago*, *supra* at 504-505, does *not* represent an abrupt or unanticipated departure from established precedent that recognized the sort of defense used in the first trial. The defendant cannot seriously contend that retroactive application of the reasoning in *Commonwealth* v. *Santiago*, *supra*, would deprive him of a viable defense available to him at the time he allegedly committed the crime.

Our cases have treated the ex post facto provisions within the State and Federal Constitutions in identical fashion. See *Commonwealth* v. *Fuller*, 421 Mass. 400, 408 (1995); *Commonwealth* v. *Kelley*, 411 Mass. 212, 214 (1991); *Commonwealth* v. *Bargeron, supra* at 590. In so doing, we have relied consistently on "[t]he classical exposition of an ex post facto law [within] the primordial case of *Calder* v. *Bull*," *Commonwealth* v. *Bargeron, supra*, as an authoritative statement of the subject, as did the Supreme Court in *Collins* v. *Youngblood, supra*. Applying the *Calder* formulation here we can safely say that retrospective application to the defendant of the current § 72 would violate neither his right to be free of an ex post facto law or, for that matter, his right to due process. From Federal or State constitutional standpoints then, the Commonwealth is not barred from retrying the defendant before the Juvenile Court. The inquiry, however, does not end there.

"Absent clear language to the contrary it is presumed that legislation is not intended to operate retroactively." *Commonwealth* v. *Fuller, supra* at 407-408. That is so, even if, as here, ex post facto considerations play little or no decisive role. See *Nantucket Conservation Found., Inc.* v. *Russell Mgmt. Inc.*, 380 Mass. 212, 214 (1980). Cf. *Commonwealth* v. *Davis*, 380 Mass. 1, 16 (1980) (court "does well to tread lightly" in applying statutory amendments retroactively if doing so might implicate ex post facto provisions in State and Federal Constitutions).

Chapter 200 of St. 1996 (1996 Act) fundamentally changed the manner in which the cases of juveniles accused of committing violent crimes are to be handled in this Commonwealth. See generally R.L. Ireland, Juvenile Law §§ 1-3 (Supp. 1996). The 1996 Act was passed with an emergency preamble making some of its provisions immediately effective on final approval, which occurred on July 27, 1996. Through § 39 of the 1996 Act, the remaining provisions (including § 13 [*b*], extending Juvenile Court jurisdiction in certain instances to persons aged twenty-one) did not become effective until October 1, 1996. The 1996 Act, thus, was plainly intended by the Legislature to operate *prospectively* from the date of passage (but with the majority of the provisions not becoming effective until October 1, 1996, more than two months *after* passage).

On November 28, 1997, some sixteen months after passing the 1996 Act, the Legislature stated once again its intent that

§ 13 of the 1996 Act was *not* effective prior to October 1, 1996. The Legislature also addressed any ambiguities in the original bill as to whether the provisions of the 1996 Act could be made to apply to crimes committed prior to the October 1, 1996, effective date. The Legislature declared:

> "Sections 1 to 13, inclusive, and sections 16 to 38, inclusive, of chapter 200 of the acts of 1996 shall apply to complaints filed and indictments returned *for offenses allegedly committed on or after October 1, 1996*" (emphasis supplied).

St. 1997, c. 208, § 2. We would be hard pressed to find a clearer expression of the Legislature's wishes on the subject, which are that the amendment to G. L. c. 119, § 72, here at issue, applies only to offenses allegedly committed "on or after October 1, 1996" — more than two years after the offense that occurred here. See *Commonwealth* v. *Fuller, supra* at 410, wherein we held that a legislative provision that an earlier amendment to G. L. c. 119, § 72, effective December 31, 1991, meant that the amendment "appl[ies] only to offenses committed on or after that date." It follows that G. L. c. 119, § 72 (1994 ed.), applies to the defendant. Because the defendant is now over the age of nineteen, the Juvenile Court lacks jurisdiction to conduct a retrial.

We have consistently declined to expand the Juvenile Court's jurisdictional limits as those have been prescribed by the Legislature through differing versions of G. L. c. 119, § 72, even though that, at times, has meant that a juvenile who has "aged out" of the Juvenile Court's jurisdiction has escaped prosecution altogether. See *Johnson* v. *Commonwealth,* 409 Mass. 712, 716-717 (1991) (Juvenile Court had no jurisdiction over juvenile who committed crime before his seventeenth birthday, where proceedings against him were not completed prior to his eighteenth birthday); *Commonwealth* v. *A Juvenile,* 406 Mass. 31, 33-34 (1989) (same result). But see *D'Urbano* v. *Commonwealth,* 345 Mass. 466, 470, 472 (1963) ("no provision which in terms gives jurisdiction over a child apprehended when under seventeen and not brought to trial until after eighteen"; "absence of valid juvenile procedures did not deprive the Superior Court of jurisdiction").

Counsel for the defendant concedes that his client will go

free if we are to conclude, as we now do, that G. L. c. 119, § 72 (1994 ed.), applies in this case. We are constrained to arrive at this result by clear language in the statute. A judgment is to enter in the county court directing that the indictment be dismissed.

*So ordered.*