# United States Court of Appeals
## For the First Circuit

No. 02-2536

FÉLIX SANTIAGO,

Petitioner, Appellant,

v.

LUIS SPENCER,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Patti B. Saris, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Baldock,* Senior Circuit Judge.

Willie J. Davis, with whom Davis, Robinson & White, LLP, were on brief, for appellant.
Cathryn A. Neaves, Assistant Attorney General, Criminal Bureau, with whom Thomas F. Reilly, Attorney General, were on brief, for appellee.

September 22, 2003

_____

* Of the Tenth Circuit, sitting by designation.

**TORRUELLA, Circuit Judge.** Petitioner-appellant Félix Santiago appeals the district court's dismissal of his petition for a writ of habeas corpus. After careful review of the record, we affirm.

## I. Factual Background

On June 5, 1994, Vilma Flores went to the Carter Playground in Boston to watch her fiancé play softball. There were a number of teams playing that day and a crowd of several hundred people had gathered to watch the games. Shortly after 5:00 p.m., Flores walked to the concession stand to buy food. On her way back, she passed two groups of men exchanging angry words. The appellant, Félix Santiago, age sixteen, was straddling a bicycle between parked cars near where the men were arguing.

In a statement to police, Santiago stated that he saw a rival group of men at the park, and told his friends that the men were at the playground. Santiago's friend, one of the men who was later involved in the argument, asked him to "go get something." At this direction, Santiago left to borrow a gun from a nearby video store and returned to the scene. After Santiago returned, the argument between the two men erupted. Apparently, one of the men in the other group said "Take him out," referring to Santiago's friend. While it is unknown which side started shooting, the two groups began shooting at each other. Flores was struck by a bullet

and killed.  An eight year old boy playing nearby was shot in the leg.

The bullet which killed Flores was never recovered. Therefore, there was no conclusive forensic evidence as to whether the bullet that killed her was fired by Santiago or one of the men in the other group.  At trial, the Commonwealth attempted to prove that the position of Flores when she was shot showed that the fatal bullet came from Santiago's gun.  Santiago argued that the Commonwealth could not prove who fired the fatal shot, and further argued that Santiago only began shooting as an act of self-defense.

Based on this evidence, the defendant was adjudicated delinquent for charges including first degree murder.

## II.  Procedural History

Santiago's case has a lengthy procedural history in the Massachusetts state courts.  For clarity's sake, we separate our discussion of <u>Santiago</u> II and III, which concern Santiago's conviction and the jurisdiction of the juvenile court, from <u>Santiago</u> IV, which addresses the constitutional issues raised by Santiago.  Thereafter, we examine his subsequent re-trial and conviction, as well as his habeas petition in the lower courts.

### 1.  **<u>Santiago</u> II & III**

Santiago appealed his conviction to the Supreme Judicial Court.  <u>Commonwealth</u> v. <u>Santiago</u>, 425 Mass. 491 (1997) (<u>Santiago</u>

-3-

II).[1]  In that appeal, Santiago claimed, inter alia, that the prosecutor made improper closing arguments and that there was insufficient evidence to show that Santiago, as opposed to others engaged in the shootout, fired the bullet that killed Flores.

The SJC reversed Santiago's adjudication of delinquency, finding that the prosecutor's closing statements were improper and that the trial court improperly admitted unduly prejudicial and otherwise irrelevant evidence.  At the same time, the SJC rejected Santiago's sufficiency of the evidence claim, holding that under Massachusetts law, it did not matter whether Santiago had in fact fired the shot that killed Flores:

> As to the issue whether the defendant fired the fatal shot, where the defendant chooses to engage in a gun battle with another with the intent to kill or do grievous bodily harm and a third party is killed, the defendant may be held liable for a homicide even if it was the defendant's opponent who fired the fatal shot.  Thus the inability to prove who fired the fatal shot would not be ground for a directed verdict.  The defendant's acts need not be the sole or exclusive cause of death . . . . By choosing to engage in a shootout, a defendant may be the cause of a shooting by either side because the death of a bystander is a natural result of a shootout, and the shootout could not occur without participation from both sides.

---

[1]  Prior to Santiago II, Santiago filed an appeal to the SJC concerning double jeopardy matters not relevant to this habeas proceeding.  Santiago v. Commonwealth, 422 Mass. 1012 (1996) ("Santiago I").

Santiago II, 425 Mass. at 503-04 (internal citations omitted).  The SJC added a footnote to the quoted text saying that there "is no bar to the Commonwealth's proceeding at retrial on this theory" of shootout liability.  Id.  at 503 n.5.

Nine days after his case was reversed and remanded to the juvenile court, Santiago, who was sixteen when the shooting occurred, turned twenty years old.  On remand, Santiago moved to dismiss the indictment on the ground that he had "aged out" of the Juvenile Court's jurisdiction; that is, the jurisdiction of the Boston Juvenile Court did not extend to a person who reached the age of nineteen.  See Mass. Gen. Laws ch. 119, § 72 (1994).  The juvenile court denied his motion, and Santiago once again appealed to the SJC.  On April 14, 1998, the SJC reversed the juvenile court and ordered that Santiago's indictment be dismissed since the juvenile court no longer had jurisdiction to try him.  Santiago v. Commonwealth, 427 Mass. 298, 302-03 (1998) (Santiago III).

At the time of that appeal, certain Massachusetts statutory amendments had extended the jurisdiction of the juvenile court to cover defendants up to age twenty-one for certain crimes of violence.  See Mass. Gen. Laws ch. 119, § 72 (1996).  Because, however, the SJC found that the amendments were "plainly intended by the legislature to operate prospectively from the date of passage," the court concluded the amendments could not apply retroactively to Santiago.  Santiago III, 427 Mass at 301.

Consequently, the SJC ordered the juvenile court to dismiss the indictment.  Id. at 302-03.

Prior to dismissal, a single justice of the SJC stayed the Santiago III judgment.  While the stay was pending, the Massachusetts legislature enacted new legislation which specifically and unequivocally granted the juvenile court jurisdiction over persons twenty-one years or younger so long as the offense was committed between December 31, 1991, and September 30, 1996.  See 1998 Amendments to Mass. Gen. Laws ch. 119, § 72,  St. 1998, ch. 98, §§ 3, 5. ("Chapter 98").[2]   Based on the new legislation, the SJC concluded its earlier ruling was no longer valid.  The SJC ordered rehearing on its own motion, and Santiago challenged the applicability of Chapter 98 to his case.

---

[2]  Chapter 98 of St. 1998 provides, in relevant part:

SECTION 3.  Notwithstanding any language contained in [Mass. Gen. L. ch. 119, § 72] relating to the age limitation for persons over whom the juvenile court may exercise power and authority . . . the divisions of the juvenile court department and the juvenile sessions of the trial courts shall continue to have jurisdiction over persons whose cases were properly commenced in juvenile court, regardless of the current age of the person charged, pending final adjudication of such cases, including all remands and retrials following appeals from such cases.
...
SECTION 5. Section 3 of this act shall apply to complaints filed and indictments returned for offenses allegedly committed between December 31, 1991 and September 30, 1996, inclusive.

<u>Santiago</u> v. <u>Commonwealth</u>, 428 Mass. 39 (1998), <u>cert. denied</u>, 525 U.S. 1003 (1998) (<u>Santiago IV</u>).

### 2. <u>Santiago IV</u>

Santiago raised, inter alia, two constitutional issues in <u>Santiago IV</u>:[3] first, he argued that Chapter 98, which extended the Juvenile Court's jurisdiction retroactively to cover his case, is an ex post facto law in violation of art. I, § 9 of the United States Constitution and art. 24 of the Massachusetts Declaration of Rights. Second, Santiago claimed that if he were to be retried under the "shootout liability" theory articulated by the SJC in <u>Santiago II</u>, it would violate his rights as both ex post facto and due process violations. Because Santiago's current habeas petition asks us to determine whether the SJC's resolution of his constitutional claims comports with federal law, we reproduce the SJC's reasoning at length.

### a. Chapter 98

The SJC concluded that Chapter 98 did not constitute an ex post facto law. Rejecting Santiago's claim, the court explained:

> In the "primordial" case of <u>Calder</u> v. <u>Bull</u>, 3 U.S. (3 Dall.) 386 (1798), the Supreme Court identified four kinds of criminal laws as ex post facto: "1st. Every law that makes an action done before the passing of the law, and which was <u>innocent</u> when done, criminal;

---

[3] These are the same issues Santiago now raises in his habeas petition.

and punishes such action. 2d Every law that
_aggravates_ a _crime_, or makes it _greater_ than
it was, when committed. 3d Every law that
_changes the punishment_, and inflicts a _greater_
_punishment_ than the law annexed to the crime,
when committed. 4th. Every law that alters
the _legal_ rules of _evidence_, and receives less
or different testimony than the law required
at the time of the commission of the offence,
_in order to convict the offender_." (Emphasis
in the original.) _See_ _Collins_ v. _Youngblood_,
497 U.S. 37, 42-43, 47-52 (1990) (reaffirming
that _Calder_ provides the authoritative
interpretation of the Federal ex post facto
clause and overruling cases to the contrary).

Chapter 98, which extends the Juvenile
Court's jurisdiction, is procedural in nature
and does not fall into any of the _Calder_
categories. It neither renders previously
innocent conduct criminal, nor retroactively
increases the penalty for a crime, nor alters
the evidentiary standard in such a way as to
make conviction easier. We therefore conclude
that c. 98 is not an ex post facto law under
the Federal or State Constitution.

. . . Thus, there is no reason why the
Legislature may not extend the Juvenile
Court's jurisdiction over pending cases.
Moreover, because there is no statute of
limitations in a murder case, there was no bar
to trying [Santiago] in the Juvenile Court.
At all times, therefore, there was a court
with jurisdiction over [Santiago]. In c. 98,
the Legislature merely added another court.
Accordingly, [Santiago] may be retried in the
Juvenile Court pursuant to c. 98.

_Santiago IV_, 428 Mass. at 41-42 (citations omitted).

### b. Shootout Liability

Santiago also argued that the SJC's determination that he

could be retried under a new prosecution theory (the "shootout

liability" theory) at his retrial violated the ex post facto

prohibition and due process of law.  The SJC summarily rejected this version of Santiago's ex post facto claim, stating that "[t]he constitutional prohibition of ex post facto laws is directed against legislative action only, and does not reach erroneous or inconsistent decisions by the courts."  Id., 428 Mass. at 39 (quoting Stokes v. Commonwealth, 368 Mass. 754, 772 (1975) (quoting Frank v. Mangum, 237 U.S. 309, 344 (1915))).

Turning to Santiago's due process claim, the court noted that while the due process clause does prohibit "retroactive application of a judicial decision '[i]f a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue'" Santiago IV, 428 Mass. at 43 (quoting Stokes, 368 Mass. at 773) (further citations omitted), its decision to permit Santiago to be retried under a shootout liability theory "did not change the substantive law adversely to [Santiago]."  Id. at 44.  As a result, the court held that the due process clause does not prohibit "retrying the juvenile on the [shootout liability] theory."  Id. at 44.

Based on these two conclusions, the SJC remanded the case to the Juvenile Court for retrial.  Id.  At the new trial, the prosecution proceeded on the theory that Santiago could be convicted of murder even if the fatal shot was fired by someone else during the shootout.  Santiago was convicted for murder in the

second degree.  That conviction was affirmed by the Appeals Court in Commonwealth v. Santiago, 50 Mass. App. Ct. 762 (2001), and the SJC denied his application for leave to obtain further appellate review in Commonwealth v. Santiago, 434 Mass. 1104 (2001).

### 3.  The Habeas Petition

Prior to retrial, Santiago petitioned for a writ of habeas corpus in the district court alleging ex post facto and due process violations.  The district court dismissed the petition without prejudice, finding that Chapter 98 did not constitute an invalid ex post facto law, and abstaining on Younger grounds from deciding whether retrial on the shootout liability theory violated his right to due process of law.  Younger v. Harris, 401 U.S. 37, 46 (1971).

Santiago appealed the dismissal of his petition.  On appeal, we concluded that the district court should have abstained on Younger grounds from deciding the case at all.

After his final conviction and appeal to the SJC, Santiago filed a second petition for a writ of habeas corpus on March 7, 2002.  The United States Magistrate Judge hearing his petition recommended that it be dismissed.  The district court adopted the Magistrate's report and recommendation on November 18, 2002, and dismissed the petition.  This appeal followed.

### III. Discussion

Under the standard established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 104, 110 Stat. 1214, 1219 (1996), federal courts may not grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings unless the state court decision: 1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or 2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." McCambridge v. Hall, 303 F.3d 24, 34 (1st Cir. 2000) (en banc) (quoting 28 U.S.C. § 2254(d) (Supp. II 1996)) (quotation marks omitted). Thus, habeas relief is available here only if Santiago can show that the SJC's ex post facto or due process determinations in Santiago IV were "contrary to" federal law or involved an "unreasonable application" of the facts to the correct governing legal rule.

A state court decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

A state decision involves an "unreasonable application" if the state court identifies the correct governing legal principle from a Supreme Court decision, but "unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. The reasonableness test is an objective one; in making its decision, a federal court must "ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 410-11. While reasonableness is a fluid concept, we have established some parameters for evaluating state court application of federal law. As we held in McCambridge, "if it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." McCambridge, 303 F.3d at 36. Thus, "some increment of incorrectness beyond error is required . . . . The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment" of this Court. Id.

### 1. Ex Post Facto Claims

Santiago cannot show that the SJC's decisions regarding his ex post facto claims are "contrary to" clearly established federal law. In deciding whether Chapter 98 was an ex post facto law, the SJC correctly sought guidance from the "primordial" case of Calder v. Bull. Santiago IV, 428 Mass. at 41-42 (citing Calder, 3 U.S. 386). The court correctly determined that since Chapter 98

-12-

"neither renders previously innocent conduct criminal, nor retroactively increases the penalty for a crime, nor alters the evidentiary standard in such a way as to make conviction easier," it does not fall under any of the Calder categories of ex post facto laws. Santiago IV, 428 Mass. at 41-42. Reaching this decision, the SJC noted that at all times there was a court with jurisdiction over the petitioner; there was therefore no barrier under state or federal law to extending the jurisdiction of any one of the courts in the Commonwealth over Santiago's case. See Santiago III, 428 Mass. at 42. Additionally, there are no Supreme Court cases involving a "set of materially indistinguishable facts" that are contrary to the outcome in the SJC. See Williams, 529 U.S. at 412-13.

Likewise, the SJC properly rejected Santiago's claim that his retrial under a new prosecution theory violated the prohibition against ex post facto laws. As the court correctly noted, the Supreme Court determined in Frank that "the constitutional prohibition: 'No state shall pass . . . any bill of attainder, ex post facto law, or law impairing the obligation of contracts,' as its terms indicate, is directed against legislative action only, and does not reach erroneous or inconsistent decisions by the courts. Frank, 237 U.S. at 344.

The SJC's application of Calder and Frank to Santiago's claims was neither "contrary to" nor constituted an "unreasonable

-13-

application" of federal law.  We therefore leave undisturbed the SCJ's determinations regarding Santiago's ex post facto claims.

### 2.  Due Process

Santiago also argues that the SJC's retroactive application of Chapter 98 violated the Due Process Clause. According to Santiago, the SJC's decision violated standards of fundamental fairness because he had relied on a particular interpretation of the law at his original trial permitting him to claim that he was not guilty because he had not fired the shot that killed Flores.  Because the SJC's decision in Santiago II changed Massachusetts law, he argues that his retrial under the new shootout liability theory violated due process.

Santiago cannot show that the SJC's rejection of his due process claim was contrary to an established Supreme Court rule, or was an unreasonable application of Supreme Court precedent.  He has not cited a single authority intimating that a change in prosecutorial theory at retrial violates due process.  Moreover, he did not (and in our opinion, cannot) show that the SJC erred when it determined that Santiago II "did not change the substantive law adversely to [Santiago]."  Santiago IV, 428 Mass. at 44.  Because Santiago has not shown that he was deprived of a defense to which he was entitled under Massachusetts law, we will not set aside the SJC's determination that the prosecution's change of theory did not violate his due process rights.

-14-

## IV.  Conclusion

Santiago failed to state a claim upon which relief may be granted.  We therefore affirm the district court's dismissal of his petition.

**<u>Affirmed</u>**.