**Wilson PASTEUR, Petitioner**

v.

**Karin BERGERON, Respondent.**

**Civil Action No. 07–CV–11352–RGS.**

United States District Court,
D. Massachusetts.

Aug. 21, 2008.

Alan J. Black, Alan Black, Attorney at Law, Springfield, MA, for Petitioner.

Wilson Pasteur, Petitioner Pro Se.

Randall E. Ravitz, Office of the Attorney General, Boston, MA, for Respondent.

## ORDER ON REPORT AND RECOMMENDATIONS

STEARNS, District Judge.

Report and Recommendations adopted and the petition is dismissed with prejudice.

## REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS (Docket # 1)

ALEXANDER, United States Magistrate Judge.

### Procedural History

On October 18, 2002, Petitioner, Wilson Pasteur, was convicted by an Essex Coun-

ty Superior Court jury of second-degree murder in the death of Savorn Prom on a joint venture theory in violation of Massachusetts General Law ("M.G.L.") c. 265 § 1 and unlawfully carrying a firearm in violation of M.G.L. c. 140 § 121. That same day, Pasteur was sentenced to a term of life in state prison with the possibility of parole for the second degree murder conviction and a term of four to five years in state prison for the conviction of unlawfully carrying a firearm.

Pasteur timely appealed his conviction to the Appeals Court of Massachusetts ("Appeals Court") on the following grounds—(1) the trial judge incorrectly instructed the jury on joint venture and malice; (2) the defendant was improperly limited in his self-defense and provocation defenses; (3) the judge abused his discretion when he improperly allowed the prosecution to use a peremptory challenge of the only black juror; (4) the judge inappropriately allowed the inclusion of certain evidence including expert testimony; (5) the judge inappropriately allowed evidence of Pasteur's prior criminal activity; and (6) the prosecution improperly argued facts not in evidence when making its closing statement at trial. The Appeals Court affirmed the Essex County Superior Court on July 24, 2006. *See Commonwealth v. Pasteur*, 66 Mass.App.Ct. 812, 850 N.E.2d 1118 (2006). On August 9, 2006, Pasteur filed an Application for Leave to Obtain Further Appellate Review ("ALOFAR") which was denied by the Appeals Court on August 15, 2006. Pasteur then filed an ALOFAR with the Massachusetts Su-

preme Judicial Court on August 14, 2006 which was denied on September 11, 2006. *See Commonwealth v. Pasteur*, 447 Mass. 1109, 853 N.E.2d 1060 (2006).

On July 24, 2007, Pasteur filed the instant Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. On August 7, 2007, Judge Stearns referred the case to this Court for a Report and Recommendation on the Government's motion to dismiss for failure to exhaust state remedies on Claim IV of the Petition.[1] On May 2, 2008, Judge Stearns adopted this Court's recommendation that Pasteur exhausted his state remedies for Claim IV and, thus, denied the motion to dismiss.[2] Now before this Court, for a Report and Recommendation on the merits, is Pasteur's Petition.

As detailed below, this Court FINDS that the decisions of the state courts were not contrary to or involving an unreasonable application of Supreme Court precedent, and did not result in a decision based on an unreasonable determination of the facts in light of evidence presented at trial. 28 U.S.C. § 2254(d)(1) & (2). Accordingly, this Court RECOMMENDS Pasteur's Petition be DENIED.

**Factual Background**[3]

The instant Petition stems from a conviction arising out of events occurring the evening of June 5, 2000. Pasteur, then nineteen years old, lived in Lynn, Massachusetts with his family. Both Pasteur and Miller were members of the "Folk" gang. In addition, Miller was an associate of Derek Wright who was a member of the "Crypt" or the "A.K." gang.[4] That eve-

---

1. Claim IV of the Petition is that during closing statements, the prosecution improperly argued facts not in evidence which inflamed the passions of the jury.

2. Judge Stearns' order of May 2, 2008, 2008 WL 1930442, also properly set the named defendant as Karin Bergeron and dismissed the previously named defendant.

3. This factual background is based on that found in the opinion of the Appeals Court of Massachusetts. *See Pasteur*, 66 Mass.App.Ct. at 813–16, 850 N.E.2d 1118.

4. According to the record of the Appeals Court, there is conflicting testimony about Wright's gang affiliation.

ning, Miller and Pasteur met at Pasteur's apartment where Miller told Pasteur that Wright wanted to go on a "mission" to retaliate for an attack earlier that week by a rival gang, the "Bloods", resulting in injuries to Wright. Wright and Miller stole a .357 caliber handgun several days before, which Wright apparently planned to use for the mission.

Miller and Pasteur went to Wright's house where Wright described his plan to Pasteur. Pasteur questioned the need for all of them to go when they had only one gun. Wright then took Pasteur and Miller to another gang member's house to retrieve a .44 caliber handgun that had previously been stolen. Wright loaded the .44 caliber handgun and Pasteur, who purposefully took the gun away from Miller, ended up carrying the handgun in his waistband.

Pasteur, Miller and Wright discussed potential areas where members of the Bloods might be and decided to go to Lowell Street, a known hangout of several Bloods members. They walked to the end of Lowell Street, passing a white car in which there were a group of Bloods. At the end of the street, Wright told Miller and Pasteur to circle the block and then come back up Lowell Street. Wright would count to thirty-seven and then walk in the direction of the white car and fire at the Bloods from the back of the car while Pasteur fired from the front.

Pasteur and Miller proceeded to walk around the block and, while doing so, Pasteur told Miller he thought the plan was "stupid" because any of the three of them could get shot. Pasteur testified that he continued despite hesitations because he did not think that Wright would go

through with the proposed plan. Pasteur and Miller continued to circle the block and, upon arriving at Lowell Street, did not see Wright where he was supposed to be waiting. As such, they continued to walk past the Bloods' car. Seeing Pasteur and Miller approach, several Bloods got out of the car and began shouting insults. The Bloods then followed Pasteur and Miller who observed the Bloods holding objects such as bricks and sticks behind their backs or under their shirts. At this time, Pasteur and Miller also saw Wright in a squatting position in the street holding a gun and wearing a bandana over his face.

Pasteur passed Wright, turned to face the Bloods and exchanged insults with the closest one. Pasteur then took out his gun, first holding it by his side and then raising and pointing the gun. The closest member of the Bloods ran. Pasteur then fired a shot, sending the other Bloods running. Pasteur attempted a second shot, but the gun misfired. After Pasteur fired his shot, Wright then fired four or five shots, one of which struck Prom in the face, killing him.

Pasteur, Miller and Wright ran from Lowell Street and Pasteur and Miller met at Pasteur's apartment where Pasteur unloaded the .44 caliber handgun. Pasteur and Miller then hid the handgun at a friend's house. The following day, Pasteur and Miller, learning that the police were looking for them, left for Boston and hid in an apartment closet, where they were ultimately found.[5]

Pasteur asserts four grounds for relief with this Petition, to wit: (1) the Commonwealth was incorrectly allowed to peremptorily challenge the only black juror; (2)

---

5. Wright was charged with murder as a principal and Pasteur with murder as a joint venturer. Miller pled guilty to manslaughter in exchange for testimony against Wright and Pasteur. Wright was subsequently convicted of first degree murder on a theory of deliberate premeditation and Pasteur was convicted of second degree murder on a theory of joint venture.

there was an unlawful "abbreviated" version of a self-defense, reasonable provocation and excessive force instruction given at trial which prejudiced Pasteur; (3) Pasteur was improperly limited from arguing self-defense or provocation by sudden combat or excessive force self-defense at trial; and (4) the prosecution was inappropriately allowed, after an objection by the defense, to argue during its closing statement facts not in evidence and designed to inflame the passions of jury members.

## Discussion

### Standard of Review

A federal district court may consider a petition for a writ of habeas corpus for a person in custody based on a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The instant Petition was filed on July 24, 2007, therefore, the Antiterrorism and Effective Death Penalty Act ("AEDPA") which amended 28 U.S.C. § 2254(a) on April 24, 1996, serves as the governing standard for this Court's review. Pub.L. No. 104–132, 110 Stat. 1214 (1996); see Woodford v. Garceau, 538 U.S. 202, 210, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003). By virtue of the AEDPA, a federal court cannot grant habeas relief for a claim that was adjudicated in state court, unless it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2); Sleeper v. Spencer, 510 F.3d 32, 37 (1st Cir.2007).

Under the changes made by AEDPA, a state court's findings of fact are "presumed to be correct" and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). AEDPA introduced many changes to the federal habeas statute, requiring that there now be a "presumption of correctness of state-court factual findings" and a new "highly deferential standard for evaluating state-court rulings." Lindh v. Murphy, 521 U.S. 320, 334 n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); see also Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (state court decisions should be given the "benefit of the doubt").

■ A state court decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." Lockyer v. Andrade, 538 U.S. 63, 73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), (quoting Williams v. Taylor, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)); see Santiago v. Spencer, 346 F.3d 206, 211 (1st Cir.2003).

■ A state court decision involves an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing legal principle from the Supreme Court decisions but unreasonably applies that principle to the facts of the prisoner's case." Smiley v. Maloney, 422 F.3d 17, 20 (1st Cir.2005) (quoting Williams, 529 U.S. at 413, 120 S.Ct. 1495); see also McCambridge v. Hall, 303 F.3d 24, 33 (1st Cir.2002) (en banc); see also Santiago, 346 F.3d at 211. It is not enough that the state court decision applied the federal law incorrectly; it must have been applied unreasonably, producing an unreasonable result. See L'Abbe v. DiPaolo, 311 F.3d 93, 96 (1st Cir.2002); Williams, 529 U.S. at 411, 120

S.Ct. 1495 (emphasizing Congress's use of the word "unreasonable" under AEDPA as opposed to "erroneously" or "incorrectly"). The federal court uses an objective test to determine whether federal law was applied unreasonably. *Santiago*, 346 F.3d at 211 (quoting *Williams*, 529 U.S. at 410–11, 120 S.Ct. 1495).

### Analysis

#### Peremptory Challenge

 Pasteur first claims the Commonwealth improperly used a peremptory challenge on the only black member of the selected jury. Under the Equal Protection Clause of the Fourteenth Amendment, a defendant accused of a crime is entitled to a fair and unbiased jury. *Batson v. Kentucky*, 476 U.S. 79, 84–88, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *see Powers v. Ohio*, 499 U.S. 400, 404, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Counsel may exercise peremptory challenges when selecting a jury and these challenges are presumed to be appropriate, except with a showing that "(1) there is a pattern of excluding members of a discrete group and (2) it is likely that the individuals are being excluded solely on the basis of their membership" in that group. *Commonwealth v. Maldonado*, 439 Mass. 460, 463, 788 N.E.2d 968 (2003) (internal citations omitted).

To establish a violation of the Equal Protection Clause in jury selection, the Supreme Court has held that a defendant must first make a prima facie showing of purposeful racial discrimination. *Batson*, 476 U.S. at 96, 106 S.Ct. 1712. Such a determination can be made by showing membership by the defendant in a recognized racial group and by putting forward an inference that the prosecution used a peremptory challenge excluding someone from the jury based on race. *Batson*, 476 U.S. at 96, 106 S.Ct. 1712; *see also Powers*, 499 U.S. at 405, 111 S.Ct. 1364. To determine whether the defendant has set forth a prima facie case, the trial court "should consider all relevant circumstances." *Batson*, 476 U.S. at 96, 106 S.Ct. 1712. Once the defendant makes the required prima facie case, the burden then shifts to the state to provide a neutral explanation for the challenge. *Batson*, 476 U.S. at 97, 106 S.Ct. 1712; *Maldonado*, 439 Mass. at 463, 788 N.E.2d 968. It is then the role of the trial court to decide whether purposeful discrimination has been established. *Batson*, 476 U.S. at 98, 106 S.Ct. 1712. The judge must determine whether the reasoning provided for the exclusion was "bona fide" or a sham excuse. *Commonwealth v. Soares*, 377 Mass. 461, 491, 387 N.E.2d 499 (1979).

Pasteur's jury was selected and later that same day, the prosecution discovered the subject juror may have omitted information on the questionnaire that required potential jurors to state whether they or any members of their immediate family had ever had involvement "as a party or a victim in a civil or criminal case." *Pasteur*, 66 Mass.App.Ct. at 823, 850 N.E.2d 1118. This discovery was made when after jury selection, the prosecution spoke with the Lynn Police regarding the trial and mentioned the names of the two jurors from Lynn. Trial transcript, volume I, page 5 (hereinafter referred to as "Tr. vol. ——, ——"). The omissions included information about a federal suit against the Lynn Police regarding a relative of the juror who died while in a Lynn holding cell, a minor motor vehicle charge, a breaking and entering conviction from 1979, and a 1980 indictment on charges of aggravated rape and kidnaping. *Pasteur*, 66 Mass. App.Ct. at 823, 850 N.E.2d 1118; *see also* Tr. vol. I, 5–8.

After impanelment, but before the jury was sworn in, the prosecution informed the judge about the situation. *Pasteur*, 66 Mass.App.Ct. at 823, 850 N.E.2d 1118.

The judge found that the omissions were unintentional and, therefore, the juror could not be dismissed for cause. *Id.* at 824, 850 N.E.2d 1118. However, because the juror was the only black member of the jury, the judge found that the Commonwealth's exercise of a peremptory challenge provided the necessary prima facie evidence, as required in *Batson,* for purposeful discrimination and, therefore, a legitimate reason for the challenge had to be provided. *Pasteur,* 66 Mass.App.Ct. at 824, 850 N.E.2d 1118. Agreeing with the Commonwealth, the trial judge found that the juror's "criminal past" was a legitimate reason for exercising a peremptory challenge. *Id.* After an objection by the defense when the judge stated the neutral reasoning for the Commonwealth, the judge then made the prosecution state its reasons for the peremptory challenge, which were the same as previously stated by the judge. *Id.* at 823–24, 850 N.E.2d 1118.

On appeal, the Commonwealth averred that the reasons for the challenge were "bona fide" based on both the record of the potential juror as well as on the juror's omissions and inability to follow the rules for filling out the questionnaire. Brief for the Commonwealth on appeal from the judgment of the Superior Court, page 33 (hereinafter referred to as "Resp't Br. ——"). The Commonwealth maintained that as soon as the prosecution became aware of the potential juror's criminal record, the prosecution alerted the judge. Resp't Br. 33. As the Commonwealth further contended, the timing of such knowledge prevented it from exercising a peremptory challenge earlier. *Id.* In addition, the prosecution informed the judge prior to the judge stating the reasoning for the challenge. Resp't Br. 33–34. Lastly, the Commonwealth averred that the context of the challenge demonstrates that the reasoning was genuine and bona fide. Resp't Br. 34.

The Appeals Court found that the trial judge did independently assess the prosecution's reasoning for the peremptory challenge and did not use his own reasoning when excusing the potential juror. *Pasteur,* 66 Mass.App.Ct. at 825, 850 N.E.2d 1118. The judge simply restated the prosecution's position previously offered to the court. *Id.* Additionally, the Appeals Court found there was no basis to second guess the trial judge's decision that there was a race neutral reason for the challenge. *Id.*

With the instant Petition, Pasteur contends that because his case involved a cross-racial murder, a diverse jury is critical to protect Pasteur's constitutional rights. Petitioner's Motion and Memorandum in Support of Wilson Pasteur's Petition, page 28 (hereinafter referred to as "Pet'r's Mem. ——"). Pasteur asseverates that the neutral reasons provided by the prosecution for the challenge were first asserted by the trial judge and then adopted by the prosecution. Pet'r's Mem. 27. Additionally, the trial judge did not allow the Commonwealth to dismiss the potential juror for cause, finding that the actions of the juror to leave out information on the questionnaire was not deliberate. Pet'r's Mem. 27. Pasteur maintains that the judge implicitly must have found that a prima facie case of discrimination since the judge required race neutral reasoning for the challenge. Pet'r's Mem. 26. Pasteur contends that the judge had adequate time to determine that omitting certain information from the questionnaire was enough to excuse the juror earlier. Pet'r's Mem. 27. Pasteur further contends that the prosecution had no such bona fide neutral reasons for challenging this juror who was the only black juror in the venire. Pet'r's Mem. 28.

Under 28 U.S.C. § 2254(e)(1), findings of fact by the state court are presumed correct. 28 U.S.C. § 2254(e)(1); *see Lati-*

*more v. Spencer,* 994 F.Supp. 60, 65 (D.Mass.1998). In addition, deference should be given to the trial judge's findings unless the judge does not independently evaluate the given reasons for the peremptory challenges or provides his or her own reasoning as to why a potential juror should serve on a jury as opposed to that of the parties. *Commonwealth v. Garrey,* 436 Mass. 422, 430, 765 N.E.2d 725 (2002); *see Commonwealth v. Fryar,* 414 Mass. 732, 740–41, 610 N.E.2d 903 (1993).

■ In *Latimore,* the court found that there were race neutral reasons for excusing three black jury members. 994 F.Supp. at 64. The court found that "[t]he trial court did not commit clear error in choosing to believe the reasons given by the prosecutor" and therefore denied the petitioner habeas corpus relief on that ground. *Latimore,* 994 F.Supp. at 64 (quoting *Hernandez v. New York,* 500 U.S. 352, 372, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). Similar to *Latimore,* with its findings, the Appeals Court did not contradict the *Batson* standard for peremptory challenges and did not unreasonably apply the governing standard regarding peremptory challenges. *See* 28 U.S.C. § 2254(d)(1). In addition, the state court ruling was not based on an unreasonable determination of the facts as it chose to believe the neutral reasoning as put forth by the prosecution and simply restate the reasoning in open court. *See* 28 U.S.C. § 2254(d)(2). Pasteur is, therefore, not entitled to habeas corpus relief on ground one.

### Jury Instructions on Self–Defense

■ The Supreme Court established that pursuant to the Due Process Clause of the United States Constitution, a defendant's conviction requires proof beyond a reasonable doubt for every element of the crime as charged. *In re Winship,* 397 U.S. 358, 361, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Mullaney v. Wilbur,* 421 U.S. 684, 685, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

At trial, the judge determined that instructions regarding self-defense and provocation were not required because these issues are typically not applicable to someone charged as a joint venturer independent of the principal actor. *Pasteur,* 66 Mass.App.Ct. at 819, 850 N.E.2d 1118. The judge did charge the jury with an abbreviated explanation of self-defense which was given in connection with instructions on the necessary mental state for joint venture. *Id.*

The Appeals Court addressed this issue with Pasteur contending his entitlement to a full self-defense instruction as opposed to the abbreviated instructions given by the court at trial. *Id.* at 818–19, 850 N.E.2d 1118. In addition, Pasteur averred that the instructions as given "impermissibly shifted the burden of proof to the defendant to show that he acted in self-defense." *Id.* at 819, 850 N.E.2d 1118. Pasteur further maintained that an instruction on voluntary manslaughter due to provocation should have been given by the judge. *Id.*

The Appeals Court found that the trial court was correct in not giving instructions on self-defense and provocation as such defenses are "largely, if not altogether, inapplicable to a joint venturer" because liability for a joint venturer is partly derivative from that of the principal actor. *Id.* The Appeals Court found it unnecessary for the judge to have rendered abbreviated instructions, however, there was no objection at trial regarding this portion of the instructions, and additionally, it did not lead to any prejudice towards the defendant or "a substantial risk of a miscarriage of justice." *Id.* at 821, 850 N.E.2d 1118. Furthermore, the Appeals Court found that providing an abbreviated charge to the jury regarding self-defense and provo-

cation as a basis for voluntary manslaughter was not of any consequence due to the fact that Pasteur was not entitled to either explanation. *Id.* at 819, 850 N.E.2d 1118.

In the instant Petition, Pasteur asseverates that the abbreviated version of the instructions given by the trial judge regarding self-defense, heat of passion on sudden provocation and excessive force was unlawful and defective because it improperly shifted the burden of proof to the defendant. Pet'r's Mem. 29. Pasteur avers that the judge did not provide the jurors with instructions regarding the burden of proof and with whom that burden lies, giving only general instructions and not specific instructions about the Commonwealth's burden. Pet'r's Mem. 31.

In *Mullaney v. Wilbur*, the Supreme Court considered a Maine rule that required a defendant to show by a preponderance of the evidence that he or she was provoked in order to reduce a charge of murder to one of manslaughter in constitutional violation of the Due Process Clause. *Mullaney*, 421 U.S. at 703, 95 S.Ct. 1881. In that situation, the Supreme Court found that the burden of proof was in fact impermissibly shifted to the defendant. *Id.* at 701, 95 S.Ct. 1881. The Supreme Court held that "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." *Id.* at 703, 95 S.Ct. 1881. In the present situation, the trial court found that jury instructions regarding self-defense and provocation were not required for Pasteur as a joint venturer and the Appeals Court affirmed that decision finding that "the evidence does not suggest any theory on which the principal, Wright, was privileged to act in self-defense when the conduct forming the basis of the murder charged occurred, i.e., when Wright shot the victim." *Pasteur*, 66 Mass.App.Ct. at

820, 850 N.E.2d 1118. Therefore, the issues of self-defense, heat of passion on sudden provocation and excessive force were not issues properly presented in this case accordingly to the trial court as established by the Supreme Court holding in *Mullaney.*

In *Sandstrom v. Montana*, the Supreme Court found that the instructions, as charged to the jury, did in fact deprive the defendant of his rights to due process, and therefore, the instructions were deemed unconstitutional. *Sandstrom*, 442 U.S. 510, 524, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The determination of whether constitutional rights have been maintained depends on the jury's interpretation of the instructions. *Id.* at 514, 99 S.Ct. 2450. In *Sandstrom*, the given instructions were that "*the law presumes* that a person intends the ordinary consequences of his voluntary acts," the jury could have found the presumption to be conclusive in that situation. *Id.* at 517, 99 S.Ct. 2450 (emphasis in the original). The instructions given at Pasteur's trial dealt with self-defense and were abbreviated. *Pasteur*, 66 Mass.App.Ct. at 819, 850 N.E.2d 1118. The Appeals Court found that giving an abbreviated instruction was of "no consequence where the defendant was not entitled to a self-defense instruction and the abbreviated explanation was given for a different purpose." *Id.* at 821, 850 N.E.2d 1118. Therefore, the instructions as given were not unconstitutional because Pasteur was not entitled to these instructions as a joint venturer.

Lastly, in *Lynch v. Ficco*, the district court found that the defendant did not demonstrate enough prejudice to show that the given instructions put him at an actual and substantial disadvantage at trial and, therefore, denied the petitioner's habeas relief, which was affirmed by the Court of Appeals. 438 F.3d 35 (1st Cir.

2006). In *Lynch*, the instructions at issue were meant to differentiate between voluntary manslaughter and murder. *Id.* at 40. In the current situation, although the burden was not mentioned by the trial judge, the Appeals Court found because Pasteur was not entitled to a self-defense explanation at all, the abbreviation of such a defense, which involved the burden of proof, was not an issue. *Pasteur*, 66 Mass.App.Ct. at 821, 850 N.E.2d 1118.

For a habeas petition to succeed, the state court decision must have been contrary to, or involving an unreasonable application of a standard as established by the Supreme Court. 28 U.S.C. § 2254(d)(1). Alternatively, a petition might be successful if the state court decision was based on an unreasonable determination of the facts of the case. 28 U.S.C. § 2254(d)(2). Here, the state court decisions were not contrary to the Supreme Court decisions of *Mullaney* and *Sandstrom*. *See Mullaney*, 421 U.S. at 703, 95 S.Ct. 1881; *Sandstrom*, 442 U.S. at 524, 99 S.Ct. 2450. Additionally, the decisions were not based on an unreasonable determination of the facts as the state court held Pasteur was not eligible for a self-defense or provocation defense based on the theory of joint venture. Therefore, Pasteur is not entitled to relief for ground two of his Petition.

*Self–Defense/Provocation by Sudden Combat/Excessive Force*

■ Under the Sixth Amendment, a defendant is entitled to a fair trial. U.S. Const. amend. VI; *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). Additionally, the Supreme Court has stated that "whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Id.* at 690, 476 U.S. 683 (internal citations omitted).

Pasteur contends that his right to present a defense was limited in violation of the Constitution. Pet'r's Br. 34. Pasteur maintained that evidence of self-defense was relevant to the case, specifically to the issue of whether Pasteur shared the same mental state with that of Wright, the principal actor, and thus he was only able to argue a theory of "self-preservation" at trial. Pet'r's Br. 35. Pasteur maintains that potential defenses such as self-defense, heat of passion on reasonable provocation and excessive force in self-defense were incorrectly found by the judge to be non-issues, and therefore, they could not be argued by the defense at trial. Pet'r's Br. 35.

At trial, the Commonwealth presented a theory of joint venture. *Pasteur*, 66 Mass. App.Ct. at 819, 850 N.E.2d 1118. As previously discussed, the Appeals Court addressed the issue of self-defense and provocation and found that both concepts "are largely, if not altogether, inapplicable to a joint venturer independently of the principal." *Id.* The Court further found that the liability of the accused as a joint venturer is a derivative of that of the principal. *Id.* Therefore, the Court found that there was no claim of self-defense for Wright, and thus, no such claim for Pasteur. *See Id.* at 821–22, 850 N.E.2d 1118.

■ Federal courts do not have "supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (citing *Chandler v. Florida*, 449 U.S. 560, 570, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981) & *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). Based on the information as presented at trial, the trial court found that Pasteur was not entitled

to put forth a claim of self-defense or provocation. Therefore, prohibiting Pasteur from using these defenses at trial did not deny him a "fair opportunity to present a defense." Thus, the state court decision was not contrary to Supreme Court precedent as established in *Crane* and was not an unreasonable application of the constitutional right to present a defense. *See Crane*, 476 U.S. at 687, 106 S.Ct. 2142; *see also* 28 U.S.C. § 2254(d)(1) & (2). Consequently, Pasteur is not entitled to habeas relief on ground three.

### Prosecution's Closing Statement

 In a closing statement made to the jury, the prosecution may only make statements based on evidence that has been presented as well as on inferences that can reasonably be drawn from such evidence. *Commonwealth v. Andrews*, 427 Mass. 434, 443, 694 N.E.2d 329 (1998); *see Commonwealth v. Kozec*, 399 Mass. 514, 516–17, 505 N.E.2d 519 (1987). The prosecution may not make statements based on evidence that has not been presented at trial. *United States v. Auch*, 187 F.3d 125, 129 (1st Cir.1999).[6]

 The Supreme Court has found that for a review of prosecutorial misconduct on a claim for habeas corpus relief, the appropriate standard of review is "the narrow one of due process and not the broad exercise of supervisory power." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). The standard as established by the Supreme Court for reviewing potentially improper comments made by the prosecution during trial has two considerations. *See Darden v. Wainwright*, 477 U.S. 168, 181–82, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).[7] The first issue is whether statements made by the prosecution deprived the defendant of specific rights as established in the Constitution such as the right to counsel or the right to remain silent. *Darden*, 477 U.S. at 182, 106 S.Ct. 2464; *Pagano v. Allard*, 218 F.Supp.2d 26, 33 (D.Mass.2002); *Olszewski v. Spencer*, 369 F.Supp.2d 113, 136 (D.Mass.2005). The second consideration is whether statements made by the prosecution "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181, 106 S.Ct. 2464 (quoting *Donnelly*, 416 U.S. at 637, 94 S.Ct. 1868); *see also Pagano*, 218 F.Supp.2d at 33. The misconduct must have affected the outcome of the case at trial. *Auch*, 187 F.3d at 130; *United States v. Munoz–Franco*, 487 F.3d 25, 68 (1st Cir.2007).[8] Factors to weigh for a claim of misconduct include: "(1) whether the prosecutor's misconduct was isolated

---

**6.** In *Auch*, the First Circuit found that the prosecution's conduct throughout the trial was disturbing and worthy of criticism. 187 F.3d at 133. It held however, that the evidence was such that the mistakes made at trial could not have had "any meaningful effect on the jury's ultimate verdict." *Id.* Additionally, the court found that the evidence as presented by the government was overwhelming. *Id.* at 130.

**7.** In *Darden*, the Supreme Court found that even though it agreed with the lower courts that statements made deserved to be criticized, such statements were not enough to render the petitioner's trial unfair as much of the information stated was "invited by or was responsive to the opening summation of the defense." 477 U.S. at 182–83, 106 S.Ct. 2464. The prosecution's comments did not "manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent." *Darden*, 477 U.S. at 182, 106 S.Ct. 2464.

**8.** In *Munoz–Franco*, the First Circuit found that disparaging comments made by the prosecution, although "unfortunate", in the overall consideration of a long, contentious trial and with curative instructions, did not amount to an unfair trial resulting in the denial of the defendant's due process rights. 487 F.3d at 68.

and/or deliberate; (2) whether the trial court gave a strong and explicit cautionary instruction; and (3) whether any prejudice surviving the court's instruction likely could have affected the outcome of the case." *Auch*, 187 F.3d at 129 (internal citations omitted); *Munoz–Franco*, 487 F.3d at 67–68. Similarly, the First Circuit considers several factors including, "(1) the severity of the misconduct; (2) the context in which it occurred; (3) whether the judge gave any curative instructions and the likely effect of such instructions; and (4) the strength of the evidence against the defendant." *United States v. Rodriguez–De Jesus,* 202 F.3d 482, 485 (1st Cir.2000) (quoting *United States v. Manning,* 23 F.3d 570, 574 (1st Cir.1994)).

On appeal, Pasteur contended that the prosecution created prejudicial error during his closing statement, resulting in a denial of due process, when the prosecutor said to the jurors "... And Derek Wright, I suggest to you, under that mask, you may think, has a smile; because that smile is ... that his boys ... his boys are just where they promised him they'd be." *Pasteur*, 66 Mass.App.Ct. at 828–29, 850 N.E.2d 1118. At trial, Pasteur objected to both statements and on appeal, Pasteur additionally objected to a statement made by the prosecution that Prom, the victim, was "lured" to his death by Wright, Miller and Pasteur.[9] *Id.* at 829, 850 N.E.2d 1118.

The Appeals Court found that the statement made by the prosecution, that Wright's "boys [were] just where they promised him they'd be," was an inference that could have been drawn from the evidence on record, and therefore, such a statement was permissible in the prosecution's closing argument. *Pasteur*, 66 Mass.App.Ct. at 829, 850 N.E.2d 1118. Additionally, the Appeals Court found that

the statement regarding Wright's smile under his mask was "rhetorical flourish" and members of the jury would have common sense to know that the prosecution was not suggesting facts not in evidence. *Id.* at 829, 850 N.E.2d 1118 (citing *Commonwealth v. Deveau,* 34 Mass.App.Ct. 9, 14, 606 N.E.2d 921 (1993)).

For the instant Petition before this Court, Pasteur maintains that the statements made by the prosecution in his closing argument deprived him of his constitutional right to a fair trial and that the statements did manipulate and misstate the evidence. Pet'r's Mem. 37. Pasteur contends that the statements were objected to at trial, however, no curative instructions were given to the jury. Pet'r's Mem. 38. Pasteur further contends that the case does not involve overwhelming evidence, and therefore, with the lack of instructions, this may have made it more challenging for the jury when making its decision. Pet'r's Mem. 38.

It has been established that "because this is a petition for a writ of habeas corpus, the mere fact that the prosecutor's statement was erroneous or prejudicial is insufficient to justify the intervention of this Court ... Instead, this Court is limited to reviewing state court proceedings for constitutional error." *Pagano*, 218 F.Supp.2d at 33 (internal citations omitted); *Olszewski*, 369 F.Supp.2d at 141.

■■■ The Supreme Court standard as established in *Darden* and *Donnelly*, was reasonably applied by the Appeals Court as it found that the trial court had not erred in overruling Pasteur's objections and in declining to give curative instructions. *See* 28 U.S.C. § 2254(d)(1). Additionally, the state court decision was not

---

9. The Appeals Court did not find any such statement in the record, but if such a statement had been made, the Appeals Court found that it was possible to draw such an inference from the evidence as it stands on record.

based on an unreasonable determination of the facts as presented at trial as the Appeals Court found that the evidence illustrated a plan as well as roles and locations for each of the participants which could lead to a presumption that Wright, the group leader, "experienced some sense of satisfaction that the plan appeared to be working" and that comments made by the prosecution were "rhetorical flourish." *See Pasteur*, 66 Mass.App.Ct. at 829, 850 N.E.2d 1118. *See* 28 U.S.C. § 2254(d)(2). Therefore, based on the aforementioned reasons, Pasteur is not entitled to habeas corpus relief on ground four.

## Conclusion

Based on the above reasons, this Court FINDS that the state court decisions were not contrary to or involving an unreasonable application of Supreme Court precedent and did not result in a decision based on an unreasonable determination of the facts in light of evidence presented at trial pursuant to 28 U.S.C. § 2254(d)(1) & (2). The state courts did not err in (1) allowing the Commonwealth to peremptorily challenge the only black juror; (2) deciding that there was no unlawful abbreviation of a self-defense and reasonable provocation, excessive force instruction at trial; (3) determining that Pasteur was not improperly limited from arguing self-defense or provocation at trial; and (4) deciding that the prosecution did not argue facts that were not in evidence to the jury during closing arguments. Accordingly, this Court RECOMMENDS that Pasteur's Petition for a Writ of Habeas Corpus be DENIED.

SO ORDERED.

*July 25, 2008.*